## Dundas's Appeal.   Lippincott's Appeal.

1. The Orphans' Court alone has authority to ascertain the amount of a decedent's property and order its distribution.

2. The Orphans' Court in the distribution of an estate amongst legatees, next of kin and heirs has power to inquire into and determine all questions standing directly in the way of distribution.

3. The Orphans' Court has jurisdiction for the recovery of a legacy although not charged on land.

4. A residuary legatee before the amount of his share was ascertained, assigned it to the wife of an executor for a sum much less than was ascertained to be its value. He petitioned the Orphans' Court for a decree against the executors to pay him his legacy, setting out the assignment and alleging that it was obtained by fraud. *Held*, that the Orphans' Court had jurisdiction.

5. In the distribution of an estate in the Orphans' Court, each must be heard in support of his claim and in opposition to every claimant interfering with it; the power to decide all questions essential to distribution follows the power to distribute.

6. Kittera's Estate, 5 Harris 416 ; Whiteside v. Whiteside, 8 Harris 473, followed.

[Dundas's Estate.]

March 31st 1873.　Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ.　WILLIAMS, J., at Nisi Prius.

Appeals from the decree of the Orphans' Court of *Philadelphia :* No. 164, to July Term 1871, and No. 218, to January Term 1872. In the estate of James Dundas, deceased.

This proceeding commenced April 15th 1871, by the petition of William Oswald Dundas, a legatee under the will of James Dundas, the decedent.

The petition set out, that the decedent died about July 4th 1865, having made his will which was proved July 10th 1865, and letters testamentary granted to Joshua Lippincott, James Dundas Lippincott and Richard Smethurst, the executors named in it ; that the petitioner was one of the residuary legatees under the will, and that his share would be about one thirty-second of said estate ; the executors filed an inventory of the personal estate, amounting to $366,455.08, and an inventory for collateral inheritance tax purposes, of both real and personal estate, in which the real estate was appraised at $655,871.28, the whole amount of the valuation after allowing for debts, expenses, &c., amounted to $886,814.15, exclusive of an interest which the decedent had in the estate of Henry Pratt, deceased ; that about the 6th of July 1866, the petitioner having then received about $5000 of his legacy, was informed by Joshua Lippincott, one of the executors, that it would be many years before he could receive any material benefit from the estate, by reason amongst other things of embarrassments in working the coal-mines belonging to the estate, &c., and that it would take a great while before any accurate valuation of the estate could be made ; that the petitioner at the time was in very necessitous circumstances, and in great want of money, and influenced by these discouraging representations by the executor, he wrote to him on the subject of purchasing his (the petitioner's) interest in the residue of the decedent's estate ; that the executor replied in writing to him that as executor he could not make the purchase, but that the owners of the other portion of the residue might purchase the interests of the petitioner and his sisters, who each had an interest equal to his own ; the executor invited a further correspondence ; the owners of the other portion of the residue were the wife of the executor and his son and daughter ; the sisters of the petitioner declined to sell their interests ; the executor wrote again to the petitioner saying, that he had the papers prepared for the conveyance of petitioner's interest to Mrs. Lippincott, and the petitioner's necessities continuing, he again opened negotiations with the same executor for the sale of his interest ; that the executor represented to him that the executors had made an estimate of his share in the estate of the decedent ; that it would be $13,842.57, and after deducting what had already been paid to him, would leave a balance

[Dundas's Estate.]

of $8870.30 still due him; that the executors represented that
the valuation mentioned was a full, just and equitable valuation,
but that Mrs. Lippincott, from regard to petitioner's wife, had
agreed to make the sum $10,000; the petitioner relying wholly
on the executors' representations, agreed to accept $10,000 for his
interest, and on the 17th of November 1866, delivered a deed,
assigning his interest to Mrs. Lippincott; he averred that he was
entirely ignorant of the value of the estate and had no means of
obtaining information except from the executors, and charged
that the executors withheld the settlement of the estate for the
purpose of inducing the petitioner and his sisters to sell their in-
terests for less than their value; that the $10,000 paid to him
was paid from the proper moneys of the estate of the decedent;
that Smethurst, one of the executors, afterwards died, and the
surviving executors afterwards filed an administration account on
the 27th of April 1867; that before the auditor appointed by the
Orphans' Court on that account, the petitioner gave notice that he
designed to contest the validity of his conveyance to Mrs. Lippin-
cott, and the representations as to the value of his interest were
repeated both by the executors and Mrs. Lippincott; that the
executors purchased the shares of the sisters of the petitioner for
$20,000 each, in addition to $8203.02 previously paid each of
them on account of their shares; that the auditor refused to enter-
tain the petitioner's claim for the balance of his share in the estate;
that he offered to pay Mrs. Lippincott "the principal, interest and
expenses of the conveyance," if she would reconvey to him his
interest in the decedent's estate; by his petition he continued
the offer of repayment with any expense attendant upon the recon-
veyance.

The petitioner averred that the conveyance was void by reason
of its having been made to the wife of an executor; because the
consideration was greatly below the value of the interest sold, and
because the petitioner had been induced to execute it "through
misrepresentations, concealments and impositions practised upon
him in regard to the value of his interest," and because the money
paid him for the conveyance was the money of the estate of the
decedent.

He further charged that the conveyance, if not void, could be
treated only as an acknowledgment of the receipt of $10,000 on
account of the petitioner's share of the decedent's estate, or as a
security for the return of the money advanced to him.

The prayer of the petition was that the court would set aside
the deed of assignment to Mrs. Lippincott and order it to be given
up to be cancelled, and that she be decreed a trustee of the interest
of the petitioner, and that she and her husband, the executor, be
directed to reconvey the interest to the petitioner, he repaying her
the sum of $10,000, expenses, &c., and that the executors pay to

[Dundas's Estate.]

the petitioner his full share of the estate, he allowing any sums which have been paid to him; and that the auditor be directed to suspend the settlement of the account until, &c.; and also a prayer for a citation to Mrs. Lippincott, Joshua Lippincott, her husband, and the surviving executors of James Dundas, deceased, to show cause, &c.

The respondents demurred to the petition on the ground that the court had no jurisdiction of the matters set out in the petition.

The Orphans' Court sustained the demurrer, Paxson, J., saying in the conclusion of his opinion :—

" While we do not think we have jurisdiction to entertain the present application, and to grant the relief prayed for, we are not entirely powerless in the premises. We can reach the substantial justice of this case by impounding the share of Mr. Dundas's estate in controversy, and directing the executors to hold it, properly invested, until the petitioner can be heard in a court of equity. Having our grasp upon the fund, we will hold it until the questions now raised can be decided in the appropriate tribunal.

" With this qualification we sustain the demurrer, and dismiss the petition."

The decree was as follows :—

" June 24th 1871. Demurrer sustained, executors however directed to hold the shares of the estate in controversy and keep the same properly invested until the further order of the court."

The petitioner and Mrs. Lippincott each appealed to the Supreme Court.

The petitioner assigned for error that the court sustained the demurrer and dismissed the petition.

Mrs. Lippincott assigned for error that the court directed the executors to hold the shares until the further order of the court.

*A. M. Burton* and *Black*, for petitioner.—The power of the Orphans' Court to distribute involves a power to decide all questions necessary to a proper distribution : Kittera's Estate, 5 Harris 416; 1 Story's Eq. Jur., sect. 547; Whiteside *v.* Whiteside, 8 Harris 473; Ashford *v.* Ewing, 1 Casey 214. A deed may be impeached and shown to be a nullity in any court where it is pleaded or set up, or in any proceeding where it is sought to be established as a ground of recovery : Jackson *v.* Summerville, 1 Harris 359; Bixler *v.* Kunkle, 17 S. & R. 298; Rankin *v.* Porter, 7 Watts 387; Dean *v.* Fuller, 4 Wright 474; Delamater's Estate, 1 Wharton 362; Mechling's Appeal, 2 Grant's Cases 157; Parshall's Appeal, 15 P. F. Smith, 224. The acknowledgment of a deed for the wife's land may be shown by evidence to have been obtained by fraud and duress of the wife, and thus avoided : Louden *v.* Blythe, 3 Casey 22; McCandless *v.* Engle, 1 P. F. Smith 313; Schrader *v.* Decker, 9 Barr 14. Within its orbit the

jurisdiction of the Orphans' Court is exclusive, and, therefore, as extensive as the demands of justice: Shollenberger's Appeal, 9 Harris 337; Witman & Geisinger's Appeal, 4 Casey 376. In giving general jurisdiction of a particular subject, the legislature impliedly gives every ancillary power necessary to the exercise of it: Barklay's Estate, 10 Barr 387; Loomis *v.* Loomis, 3 Casey 233; Shollenberger's Appeal, 9 Harris 337; Will's Appeal, 9 Barr 103; Hickman's Appeal, 7 Id. 464; Anshutz's Appeal, 10 Casey 375; Brinker *v.* Brinker, 7 Barr 53; Downer *v.* Downer, 9 Watts 62; Mohler's Appeal, 8 Barr 26; Sheaffer's Appeal, Id. 38; Wallace *v.* Keyser, 1 P. F. Smith 493; Hughes's Appeal, 7 Id. 181.

This is a trust under the Wills Act of 14th of June 1836, sect. 15, Pamph. L. 632, 2 Br. Purd. 1417, pl. 15; Saeger *v.* Wilson, 4 W. & S. 501; Lukens's Appeal, 7 W. & S. 48; Hunt *v.* Moore, 2 Barr 105; Miller's and Wilhelm's Appeal, 6 Casey 478, 491; Shuman's Appeal, 3 Casey 64; Heager's Ex'rs, 15 S. & R. 65; Barton *v.* Hassard, 3 Drury & Warren 461; Fox *v.* Mackreth, 2 Brown's C. C. 400; Devoue *v.* Fanning, 2 Johnson Ch. 252. The conveyance or assignment to the wife of one of the executors can have no greater effect than that of a release directly given to the executors, the validity of which is clearly within the jurisdiction of the Orphans' Court: Dundas's Appeal, 14 P. F. Smith 325. Where an estate is purchased in the name of one, but the purchase-money is actually at the time paid by another, a trust results in favor of him who paid the purchase-money: Beck *v.* Uhrich, 1 Harris 636. If there be any evidence to impeach the bona fides of an assignment under seal the assignee may be required to give full proof of consideration: Hancock's Appeal, 10 Casey 155. A release obtained by executors from the cestui que trust, by payment of about half the money due, is fraudulent and void: Bixler *v.* Kunkle, 17 S. & R. 298; Pearsoll *v.* Chapin, 8 Wright 9, 13–16. This is a case where the transfer is effected through an agent who was a trustee, and the fraudulent acts and declarations of the trustee in procuring the transfer are binding upon the transferee: Ex parte Bennett, 10 Vesey 381; Randall *v.* Errington, Id. 423; Hill on Trustees, pp. 158, 159, 537. A decree for a reconveyance may be obtained in the Orphans' Court: Lewis *v.* Lewis, 1 Harris 82. The Orphans' Court has the superintendence of the property of decedents in almost every respect and may make all persons accountable in that court into whose hands such property came: Wimmer's Appeal, 1 Whart. 104; Musselman *v.* Bell, 15 P. F. Smith 480.

*S. S. Hollingsworth* and *G. W. Biddle,* for Mrs. Lippincott.— As to the jurisdiction of the Orphans' Court, cited Act of 16th June 1836, § 19, Pamph. L. 792, 2 Br. Purd. 1104, pl. 8. While the Orphans' Court has the powers of a court of equity in the

[Dundas's Estate.]

orbit of its statutory jurisdiction, it has not general equity powers: Brinker *v.* Brinker, 2 Barr 53; Shollenberger's Appeal, 9 Harris 337; Willard's Appeal, 15 P. F. Smith 265.

The jurisdiction to distribute the assets and surplusage of the estates of decedents among creditors and others interested does not embrace the present case, because a distribution of the estate of the decedent is not asked for: Acts of April 13th 1810, sect. 1, Pamph. L. 319; 29th March 1832, sect. 19, Pamph. L. 194; 1 Br. Purd. 445, 446, pl. 198, 200; Boyer's Estate, 5 Watts 50; Kittera's Estate, 5 Harris 416; Ashford *v.* Ewing, 1 Casey 213; Dundas's Appeal, 14 P. F. Smith 332.

The Orphans' Court has no jurisdiction "where trustees may be possessed of or are in any way accountable for any real or personal estate of a decedent," except in cases where the trust is created and exists under and by virtue of a will, or appointment by the Register or Orphans' Court: Wimmer's Appeal, 1 Wharton 103; Act of 14th June 1836, sect. 15, Pamph. L. 632; 2 Br. Purd. 1417, pl. 15; Wheatly *v.* Badger, 7 Barr 459; Brown's Appeal, 2 Jones 333; Fretz's Appeal, 4 W. & S. 433.

The alleged trust in the present case does not arise under or by virtue of a will, or by appointment of the Register or Orphans' Court, but if there be one it is by implication of law: Hill on Trustees, pp. 144, 158, 159, and note 2; Id. 536, 537; Chesterfield *v.* Janssen, 2 Ves. Sen. 125.

The alleged trust in a manner affects the estate of the decedent: Hill on Trustees 536 and notes, 537; Beeson *v.* Beeson, 9 Barr 279; Coles *v.* Trecothick, 9 Vesey 247; Delamater's Estate, 1 Wharton 362; Armor *v.* Cochrane, 16 P. F. Smith 310; Fox *v.* Mackreth, 1 L. C. in Eq. 107.

If the sale be treated as a sale from one distributee to another, then the Orphans' Court has no jurisdiction: Wickersham's Appeal, 14 P. F. Smith 67.

The opinion of the court in each appeal was delivered, May 17th 1873, by AGNEW, J.

### DUNDAS'S APPEAL.

The decision of the Orphans' Court in this case was against its own jurisdiction, and in this there was error. It was said by Black, C. J., in Whiteside *v.* Whiteside, 8 Harris 473, "if there be anything, besides death, which is not to be doubted, it is that the Orphans' Court alone has authority to ascertain the amount of a decedent's property, and order its distribution among those entitled to it." The exclusiveness of this jurisdiction is sustained by numerous modern decisions, to a few of which I may refer: Shollenberger's Appeal, 9 Harris 341; Ashford *v.* Ewing, 1 Casey 213; Black's Executor *v.* Black's Executor, 10 Casey 354; Musselman's Appeal, 15 P. F. Smith 480. The contest

between the courts and the legislature spoken of by Lewis, C. J., in Bull's Appeal, 12 Harris 286, as to the extent of this jurisdiction, was settled by the Act of 13th of April 1840, Brightly's Purdon 300, pl. 167. That act authorized the Orphans' Court to appoint auditors on the application of the creditors, as well as of executors and administrators, and on the application of legatees, heirs or other persons interested, to make distribution of the estate in the hands of executors and administrators, to and among the persons entitled to the same. In Kittera's Estate, 5 Harris 416, it was said this embraced creditors, next of kin, and legatees. " The right of each (says Judge Lewis) to be heard in support of his claim, and in opposition to every claimant who interferes with it, is necessarily involved in the right to demand payment." Further on he says : " The power to decide all questions necessary to a proper distribution of the fund follows the power of distribution and vests in the Orphans' Court as a necessary incident to the jurisdiction. That court is as competent as the Common Pleas, to determine all questions of *law*, as the judges of both courts are the same, and the Orphans' Court has ample authority to send an issue to the Common Pleas for the trial of facts by the jury :" Sect. 45, Act 29th March, 1832, Bright. Purdon, p. 768, pl. 55. This language is repeated with emphasis in Bull's Appeal, *supra*, and in Black's Executor *v.* Black's Executor, *supra*. Thompson, J., repeats the remark of Woodward, J., in Shollenberger's Appeal, *supra*, that the jurisdiction of the Orphans' Court, " within its appointed orbit, is exclusive, and therefore necessarily as co-extensive as the demands of justice." It is very clear, therefore, that the Orphans' Court, in a proceeding to distribute an estate among legatees, next of kin and heirs, has ample power to inquire into and determine all questions standing directly in the way of a distribution to these parties.

The specific remedy given to a legatee to recover his legacy comes in here to strengthen the general jurisdiction and puts an end to all question. It is said, in a very excellent treatise on the Intestate System of Pennsylvania, by E. G. Scott, Esq., p. 450, that the Orphans' Court has no jurisdiction for the recovery of a legacy, unless the same is charged upon or is payable out of real estate. But the learned author probably meant no *exclusive* jurisdiction. The 47th section of the Act of 24th February 1834, relating to executors and administrators, provides, that " executors, after one year has elapsed from the granting of administration of the estate, upon the requisition of any legatee, or any other person interested, shall pay and deliver *under the direction of the Orphans' Court* having jurisdiction of their accounts, all such legacies as are due and payable by them, &c., &c., and if there shall be a residue, distributable under the intestate laws of this Commonwealth, they shall also distribute the same, and the proceedings, in any such case, shall in all respects, whether of

[Dundas's Estate.]

security or otherwise, be the same as hereinbefore provided in the cases of distribution by administrators of the estates of decedents intestate, so far as the nature of the case will admit :" Vide sections 39, 40, 41, Act of 24th February 1834, Purdon by Brightly 302, pl. 176, 177, 178. This act is followed by the Act of 16th of June 1836, relating to the jurisdictions and powers of the courts, which, in the 7th clause of the 19th section, confers upon the Orphans' Court express jurisdiction, in " Proceedings for the recovery of legacies;" Brightly's Purd. p. 765. The jurisdiction being thus beyond doubt, the manner of proceeding is equally clear, and is specifically set forth in the 37th section of the Act of 29th of March 1832, Bright. Purd. 766, pl. 17, 18, *et seq.* This is by the petition of any *person interested,* whether such interest be immediate or remote, setting forth facts, necessary to give the *court jurisdiction,* the specific cause of complaint, and the relief desired, and supported by oath or affirmation. The acts cited were reported by the commissioners to revise the laws, and are to be viewed together, as constituting an harmonious system for the settlement of estates of decedents, and the government of the Orphans' Court.

Thus it is very clear, that every legatee has a personal remedy in the Orphans' Court, for the recovery of his own legacy, and the Act of 29th of March 1832, also furnishes ample means of reaping the fruit of a recovery by execution, attachment and sequestration. Upon this petition, if necessary, the Orphans' Court would be bound to appoint one or more auditors under the Act of 13th April 1840, *supra,* to make distribution, or if a proceeding is already in progress, a decree upon the incoming petition of the legatee would await the report. Each legatee or distributee is entitled to proceed for the recovery of his own legacy or share. It is true, that legatees have an additional remedy by action of debt, detinue, account render, or on the case, against executors having sufficient assets to pay the debts and legacies : Act of 24th February 1834, § 50. But the common-law form of action is inconvenient and carries the remedy into a court having no jurisdiction to settle the executor's account, and hence the act provides, that on a plea of a want of assets the action must be suspended until an account is settled in the Orphans' Court, and the amount of the legacy, or its *pro rata,* ascertained : Sect. 53, Purd. by Brightly 3103, pl. 188.

It remains now to inquire, whether this petition conforms to the 57th section of the Act of 29th March 1832, by setting forth facts necessary to give the Orphans' Court jurisdiction. It plainly does. It sets forth the will of the late James Dundas, duly proved and registered, the bequest to the children of William H. Dundas, in equal shares, their number, and that the petitioner is one of them, and his proportional share, the issuing of letters testamen-

23 P. F. SMITH—31

[Dundas's Estate.]

tary to the executors, the filing of an inventory and settlement of two accounts showing large assets, to a share of which the petitioner is entitled, and prays that the surviving executors shall pay over to the petitioner the full amount of his share and interest in the estate, as soon as the same shall be ascertained, after allowing for, and deducting all sums of money that the petitioner has received. These facts give jurisdiction to the Orphans' Court, to compel distribution by the executors, and payment of the petitioner's share to him. Had the petition set forth nothing more the consequence would have been plain. The executors, to protect themselves, would have set forth the assignment in their answer, and cited the assignee to defend *pro interesse suo.* This would have brought from the petitioner a replication of fraud and deceit, in procuring the assignment. The paper thus standing in the way of distribution, there being two claimants to the same legacy or share of it, the jurisdiction of the Orphans' Court necessarily attaches, in order to remove the barrier to the payment of the legacy. The language of Judge Lewis, in Kittera's Estate, directly applies, that each one must be heard in support of his claim, and in opposition to every claimant who interferes with it, and that the power to decide all questions essential to distribution follows the power to distribute.

The Orphans' Court having power to determine whether the petitioner or his alleged assignee is entitled to payment of the legacy, it is evident the court is not deprived of its jurisdiction, by the setting forth of the alleged fraudulent assignment in the first instance, followed by appropriate prayers to have it set aside, and for a citation to the assignee.

Indeed, the proceeding in this form, is better adapted to decide the controversy at once preliminary to final distribution. The parties are all brought in at once, and the decree will finally dispose of the whole controversy, leaving the executors free from doubt as to the person to receive payment. Nor are we wanting in authority as to the power of a court in a distribution proceeding to determine the title of contesting claimants to the same fund as an incident of the distribution. In Souder's Appeal, 7 P. F. Smith 498, it was held, that the auditor making distribution of money arising from a sheriff's sale, had power to determine the ownership of a judgment between contesting claimants, and that the defeated claimant under the Act of 1836, relative to executions, was entitled to demand an issue : See the cases cited therein. The petition in this case is unnecessarily prolix, and sets forth matters of evidence merely. But substantial facts are set forth, sufficient to give the court jurisdiction to determine the ownership of the legacy and decree payment to the plaintiff, if he be entitled to receive it.

The decree of the Orphans' Court sustaining the demurrer is therefore reversed, the demurrer overruled, and a *procedendo*

[Dundas's Estate.]

awarded, and the defendants are ordered to pay the costs of this appeal, the costs below to abide the event of the proceeding.

## LIPPINCOTT'S APPEAL.

The decision in Dundas's Appeal, just rendered, makes it unnecessary to discuss this case.    The petition of William O. Dundas, being reinstated and a *procedendo* awarded, the retention of the shares of the estate in controversy in the power of the Orphans' Court, until the further order of the court, is necessary, to answer the claim of the successful party, when the litigation is ended. So much of the decree of the court is therefore affirmed, with costs to be paid by the appellant.