## McCahan's Estate

Before Henderson, Van Dusen, Sinkler and Stearne, JJ., and Marx, P. J., twenty-third judicial district.

174

178

*Thomas O. Haydock, Jr., Thomas R. Wickersham, D. Alexander Wieland, Mercer B. Tate, Jr.,* and *Montgomery & McCracken,* for exceptants.

*George Wanger,* contra.

STEARNE, J., February 17, 1933.—Testatrix bequeathed thirty shares of corporate stock to her testamentary trustee to pay the net income therefrom to her niece for life. Upon the decease of her niece, the principal is payable to the life tenant's brothers and sisters or their issue.

The life tenant, thus possessed of a vested equitable life estate, secured a loan from a bank and assigned as collateral therefor (a) said equitable life estate, (b) certain shares of stock in her absolute ownership, and (c) various policies of life insurance upon her own life where were payable to her estate. Subsequently, the life tenant made a second assignment, absolute on its face,

for a stated consideration to two individuals. One week thereafter the life tenant was adjudicated a voluntary bankrupt, and a trustee was appointed for her estate. The life tenant died within six months of her adjudication in bankruptcy, terminating the trust.

The corporation whose stock constituted the sole trust res liquidated during the pendency of the trust.

The testamentary trustee having filed its account, the auditing judge was required to rule, upon the stipulation of facts submitted by the parties in interest, as to the correct allocation of the proceeds of the liquidated corporate stock as between principal and income. He was also requested to award distribution of the balance of income found to be due.

A majority of the court agree with the auditing judge as to his allocation of principal and income as respects the corporation liquidation, for the reasons and under the authorities which he meticulously sets forth in his adjudication. The intact value of the stock was always maintained, and in fact has been fully realized in cash. During the pendency of the trust an enormous cash surplus was accumulated. Very properly, all that can be allocated to principal is capital gain. All accumulated earnings, temporarily withheld from the life tenant, passed to her when duly released by the liquidation of the corporation. It is wholly immaterial under what name accumulated income appears upon the corporate books. Under whatever name, it remains as accumulated earnings due the life tenant and was so properly awarded.

While the auditing judge correctly awarded the balance of income to the trustee in bankruptcy of the life tenant, yet we are of opinion that such award must be made to him subject to the rights and equities of all interested parties, these to be determined solely by the Federal court in bankruptcy: Whitney v. Wenman, 198 U. S. 539; Butterfield v. Woodman, 216 Fed. 208, 211, Nisbet et al. v. Federal Title and Trust Co., 229 Fed 644, 647. The orphans' court was not adjudicating and distributing the estate of the life tenant. It had only to do with the estate of the original testatrix and was allocating principal and income. When this life tenant, possessed of a vested equitable life estate, was adjudicated a bankrupt, the title to her interest immediately passed to the trustee in bankruptcy, and thereafter the Federal court had exclusive jurisdiction to pass upon the validity and amount of all liens, assignments or conflicting equities. The orphans' court, in the circumstances, is without jurisdiction to pass upon any of these questions. In Isaacs, Trustee, v. Hobbs Tie & Timber Co., 282 U. S. 734, Mr. Justice Roberts wrote, at page 737:

"Upon adjudication, title to the bankrupt's property vests in the trustee with actual or constructive possession, and is placed in the custody of the bankruptcy court. Mueller v. Nugent, 184 U. S. 1, 14. The title and right to possession of all property owned and possessed by the bankrupt vests in the trustee as of the date of the filing of the petition in bankruptcy, no matter whether situated within or without the district in which the court sits. Robertson v. Howard, 229 U. S. 254, 259-260; Wells v. Sharp, 208 Fed. 393; Galbraith v. Robson-Hilliard Grocery Co., 216 Fed. 842. It follows that the bankruptcy court has exclusive jurisdiction to deal with the property of the bankrupt estate. It may order a sale of real estate lying outside the district. Robertson v. Howard, supra; In re Wilka, 131 Fed. 1004. When this jurisdiction has attached the court's possession cannot be affected by actions brought in other courts. White v. Schloerb, 178 U. S. 542; Murphy v. Hofman Co., 211 U. S. 562; Dayton v. Stanard, 241 U. S. 588. This is but an application of the well recognized rule that when a court of competent jurisdiction takes possession of property through its officers, this withdraws the property from the jurisdiction of all other courts which,

though of concurrent jurisdiction, may not disturb that possession; and that the court originally acquiring jurisdiction is competent to hear and determine all questions respecting title, possession and control of the property. Murphy *v.* Hofman Co., supra; Wabash R. Co. *v.* Adelbert College, 208 U. S. 38; Harkin *v.* Brundage, 276 U. S. 36. Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation. Ex parte City Bank of New Orleans, 3 How. 292; Houston *v.* City Bank of New Orleans, 6 How. 486; Ray *v.* Norseworthy, 23 Wall. 128; In re Wilka, supra; Nisbet *v.* Federal Title & T. Co., 229 Fed. 644." See, also, Straton et al. *v.* New, Trustee, et al., 283 U. S. 318.

The trustee in bankruptcy must file his account of the fund awarded to him, and the Federal court in bankruptcy will pass upon all questions and decree distribution respecting the income awarded to such trustee in bankruptcy.

It is true that this point was not presented by any of the exceptions which were filed, nor was it argued by counsel, yet this court may itself raise the question: Pollock's Estate, 306 Pa. 301, 311.

All exceptions are dismissed and the adjudication, as herein modified, is confirmed absolutely.

VAN DUSEN, J., dissenting.—Depreciation charges are not "temporary withholdings of earnings," if made properly. They are supposed to represent actual physical deterioration and obsolescence—a permanent loss which cannot be made up by "necessary repairs and upkeep." In theory, and approximately in practice, when a building has been 100 per cent. depreciated it is worthless. If, then, the ground and the old building together sell for more than the cost of the two together, this does not show that "there was no loss through depreciation." Either too much depreciation has been charged or there has been a gain in the market value of the land, or both. In the first case, income ought to have restored to it the amount improperly charged, if it can be ascertained; in the second case, there has been a capital gain.

In the present case, the stipulation only tells us that income for some years was put into a "construction account" to which "necessary repairs and upkeep" were charged, and when this was abandoned, an account entitled "reserve against depreciation" was set up. We do not know the rate of depreciation or whether it was the proper rate. If it was a proper depreciation, then there is nothing to restore to income. In income tax practice depreciation on buildings is deducted annually. When a sale is made, the capital gain is calculated on the basis of the depreciated value. There is no attempt to readjust the income returns for the years in which depreciation has been claimed.

The burden was on the life tenant to pick out earnings, or earnings improperly put into depreciation which should have gone into surplus, and as he has not given us sufficient facts to enable us to revise the company's figures, the exceptions on this point should be sustained. It is not clear to me even that the construction account was a depreciation account.

The jurisdiction of the bankruptcy court to administer the bankrupt's property and to ascertain, foreclose and marshal liens upon it is not exclusive in the sense that admiralty jurisdiction is exclusive, for example. The jurisdiction is exclusive at the option of the bankruptcy court and its officers. Mortgages are foreclosed in the state courts, although the real owner is bankrupt, leave being given by the bankruptcy court. This practice is recognized in Isaacs, Trustee, *v.* Hobbs Tie & Timber Company and Straton et al. *v.* New, Trustee, et al., and it occurs every day. The trustee in bankruptcy may become a party to the foreclosure or to any suit already pending in the state courts at the time of the

bankruptcy. When he does so, he is bound by the decree: Davis *v.* Friedlander, 104 U. S. 570. In this case the trustee in bankruptcy has voluntarily come in and made his claim, and has won it, and he makes no request that the matter be remitted to the bankruptcy court. We may take it, I think, that the bankruptcy court consents. As the matter is within our general jurisdiction: Dundas's Appeal, 73 Pa. 474; I do not think we should abandon the responsibility of deciding it of our own motion without some intimation from the bankruptcy court or its officers that they renounce their victory and assert their right to litigate in their own court. At least we should give the parties an opportunity to get leave of the bankruptcy court to proceed with this litigation.

But I do agree that if I had been requested at the audit by the representative of the bankrupt estate, the controversy should have been turned over to the bankruptcy court except as to the Mogee claim. That court will not interfere in a suit pending at the time when the bankruptcy petition was filed: Straton et al. *v.* New, Trustee, et al. In the exhaustive note to that decision at 75 L. Ed. 1060, I do not find any case like this. The facts out of which this controversy arose occurred at Anna Taggart's death, after the bankruptcy, and I do not think it can be regarded as a suit pending at that time.

In any event, the Mogee exceptions should be dismissed without qualification. They held an absolute assignment, and the question is as to the scope and meaning of the assignment, and is, therefore, a question of title. The bankruptcy court does not draw to itself all disputes about all property which the bankrupt ever owned. See Eyster *v.* Gaff et al., 91 U. S. 521. We have decided against the assignee, with undoubted jurisdiction to do so, and there is no occasion to give him a chance to litigate the question over again in the bankruptcy court.