## Landell Estate

*George Gurdon Fay*, for accountant.

*Floyd W. Tompkins*, by *John M. McNally*, for heirs.

*Irvin Stander*, Special Assistant Attorney General, for Commonwealth.

BOLGER, J., February 14, 1957.—Decedent died November 12, 1953, intestate, unmarried and without children or issue. . . .

At the audit proof was submitted by counsel for the accountant that decedent had been adopted by her paternal aunt, Mary B. Landell, by decree of the Court of Common Pleas No. 4 of Philadelphia County, June term, 1918, no. 3369.

She thereby became a member of the adopting family for the purposes of inheritance and cut off from her natural family. Documentary evidence was also introduced which establishment conclusively that in the adopting family the nearest of kin to decedent are second cousins who are not heirs under the Intestate Act of April 24, 1947, P. L. 80. There were living, however, three natural heirs of decedent, viz., Elsie Taylor Tyler, a maternal aunt, and James T. Bryan and Benjamin Butters Bryan, children of a deceased maternal aunt.

In accordance with section 3(6) of the Intestate Act, supra, the Commonwealth of Pennsylvania is the heir.

A proceeding was instituted in the Court of Common Pleas No. 4 on behalf of the natural heirs to revoke the decree of adoption which had been entered in 1918.

The Commonwealth of Pennsylvania through the Attorney General was a party to the proceedings.

The matter was referred to a master and the action was bitterly contested on both sides. The reason for the attack on the decree was the alleged failure of notice to the adoptee who was an adult not then declared mentally incompetent, although later this action was taken and a guardian was appointed for her estate. It was claimed she did not have the capacity to consent to the adoption. Docket entries of the proceeding show that although it was commenced in March of 1954, it was not until January of 1957 that all parties entered into a stipulation of compromise. This stipulation was approved by the court of common pleas in an order which directed that the decree of adoption shall remain in full force and effect ". . . except to the extent that the legal consequences thereof have been modified by said stipulation of compromise and settlement. . . ." It is fully recognized by all parties that the orphans' court has no jurisdiction over the adoption proceedings in this case and it is also recognized that the court of common pleas has no jurisdiction with reference to the distribution of this decedent's estate since this is solely under the control of the orphans' court: Snyder Estate, 368 Pa. 393; Dundas Estate, 73 Pa. 474.

By the terms of the stipulation, the natural heirs are to receive certain distributions. In approving the stipulation the court of common pleas recognized the authority of the Attorney General to compromise litigation in which the Commonwealth is a party. This authority is referred to in Attorney General Opinion No. 419 of 1942 as follows: "It is well settled that the Attorney General in addition to his statutory powers has broad common law powers. . . . Among these broad common law powers is the power of prosecuting civil suits to judgment, including the compromise of claims, the discontinuation of suits, or satisfactions of judgments. . . ." The Attorney General, however,

does not have specific authority to make an assignment of property which belongs to the Commonwealth.

The compromise approved by the court of common pleas in reality recognizes that the natural heirs are proper parties in interest to contest the validity of its decree of adoption. It is implicit in the approval of the stipulation that the court of common pleas recognizes that the natural heirs might have succeeded in having its decree vacated. Had they been successful, the Commonwealth would not be an heir, but the entire estate would pass to the natural maternal aunt and cousins of decedent.

The parties come to this court and request that the agreement of compromise already approved by the court of common pleas may be carried out. To grant this request is to neither deny the jurisdiction of the orphans' court to order distribution nor does it attack or look behind the final decree of the court of common pleas.

Were it not for the compromise approved by the court of common pleas, the natural heirs would have no standing in this court. It might be the duty of this court to question the authority of the court of common pleas because any decree entered therein could not effect the consequences of its decree of adoption since the court is without authority to decree distribution of the adoptee's estate: Williams v. North Carolina, 325 U. S. 226.

In effect the action of the parties before the court of common pleas resulted in an equitable assignment in order to carry out the provisions of the settlement. In this case, of course, there is no dispute involving an assignment where a distributee makes a contract affecting his individual distributive share. In such a case the orphans' court does not have juprisdiction: Purman Estate, 358 Pa. 187. However, compromises of doubtful rights are favored both in equity and at law: " 'It has been truly said that every compromise

616

of a right necessarily implies that the party possesses *some* right which is surrendered' ": Way Estate, 379 Pa. 421, 437. The agreement of compromise, the terms of which will be fully set forth in awards hereunder, is approved. . . .

Leave is hereby given the accountant to make all necessary transfers and assignments.

And now, February 14, 1957, the account is confirmed nisi.