**In re MINER.**
No. 2514.

District Court, E. D. Illinois.
Dec. 31, 1934.

Wendell P. Kay, Dale A. Nelson, and Robert F. Goodyear, all of Watseka, Ill., for bankrupt.

Wallace F. Filson, of Danville, Ill., pro se.

Green & Palmer, of Urbana, Ill., for lienholder.

Wm. M. Acton, Walter T. Gunn, and O. M. Jones, all of Danville, Ill., amici curiæ.

LINDLEY, District Judge.

The trustee in bankruptcy herein, being in doubt as to his jurisdiction and responsibilities, has presented his petition asking the court's direction in the premises. A hearing has been had at which were represented the trustee, the bankrupt, and various creditors, secured and unsecured. The facts are substantially as follows:

Charles H. Miner, indebted to the Northwestern Mutual Life Insurance Company in the principal sum of $23,000 on January 16, 1928, executed and delivered his promissory note therefor, and, to secure the payment thereof, with his wife, executed, acknowledged, and delivered a mortgage deed conveying approximately 335 acres of farm land in Iroquois county, Ill. By said mortgage a lien was created upon said real estate together with the privileges and appurtenances to the same belonging and upon all of the rents, issues, and profits which might arise therefrom. The mortgage pro-

vided that upon default by the mortgagor in the payment of said indebtedness or interest thereon, or upon failure to comply with any of the terms of the mortgage, a right to foreclose should immediately accrue, and that, upon the commencement of any foreclosure, a receiver should be appointed to take possession of the premises and collect the rents, issues, and profits until the expiration of the time provided for redemption from foreclosure sale.

Default having been made in the payment of interest and taxes and upon covenants made by the mortgagor, the mortgagee on May 19, 1934, filed in this court its bill in equity to foreclose said mortgage, and thereupon a receiver was appointed. The mortgagor thereupon entered into a lease of said premises from said receiver for the year ending March 1, 1935.

On September 5, 1934, Miner filed in this court under section 75 of the Bankruptcy Act as amended (11 USCA § 203), his debtor's petition, accompanied by schedules setting forth the real and personal property claimed by him and a statement of all his indebtedness. Pursuant to the statute, the cause was referred to the conciliation commissioner, who made his report, advising the court that no composition had been effected between said debtor and his creditor, and that any further attempt to perfect a composition or extension agreement would be futile.

Thereupon Miner filed herein under subdivision (s) of section 75 of the Bankruptcy Act (11 USCA § 203 (s) his amended petition asking to be adjudged a bankrupt, and an adjudication in bankruptcy was entered and the cause referred to the referee in bankruptcy, who convened a meeting of creditors, appointed appraisers to appraise the property, and also appointed W. F. Filson, the petitioner herein, as trustee in bankruptcy.

Having qualified, the trustee requested the receiver appointed in the equity cause to deliver to the former possession and control of the said real estate. The receiver declined to comply with this request except upon the order of the court.

Miner, at the time he was adjudged bankrupt, was the owner also and in possession of certain personal property shown in the schedules. There were certain judgments against him, and the major portion of his personal property is incumbered by a chattel mortgage securing certain valid obligations.

Not only the trustee but all the other interested parties, including the secured creditors, have requested the court to act upon the petition and by formal order to announce and give to the trustee aid and direction in the discharge of his duties and responsibilities as trustee, to the end that the interested parties may be advised of the full extent and limitations of the authority, duties, and responsibilities of the trustee and of the rights of the bankrupt, the secured creditors, and all other interested parties in the estate.

The petition presented by the trustee and the facts developed at the hearing in this cause require, therefore, a construction of the provisions of section 75 of the Bankruptcy Act, as amended, including subdivision (s) thereof.

It is urged by the mortgage creditor that under a proper construction of section 75 of the Bankruptcy Act, as amended, including subdivision (s), known as the Frazier-Lemke Amendment, the true and correct interpretation of that legislation will not operate to deprive the mortgagee of its security or impair or affect the lien of its mortgage, provided its consent to any modification of the terms and provisions thereof be first obtained.

It is contended by the bankrupt that the effect of subdivision (s) is to require the court to compel the trustee to sell to the bankrupt the property covered by the mortgage, and that, if the mortgagee should object to such procedure, in such event the court shall stay all proceedings affecting the lien for a period of five years, during which time the bankrupt shall be allowed to retain possession of the land under the control of the court, pay a reasonable rental therefor, and at any time within five years obtain the title thereto by paying into court the appraised price of said real estate, irrespective of the consent of the mortgagee.

The mortgagee contends that to give this statute such a construction would require the court to hold it unconstitutional as a violation of the due process clause of the Federal Constitution. It is argued by the bankrupt that the court should direct the trustee to take possession of this real estate from the receiver appointed in the foreclosure case, and henceforth, pending the bankruptcy proceedings, direct the trustee to exercise exclusive dominion over said property, notwithstanding any objections or claims of the mortgagee or of the receiver. The mortgagee con-

tends that only with its consent can the court give to the trustee in bankruptcy such exclusive jurisdiction over the property.

■ The Bankruptcy Act, as from time to time amended (11 USCA), is general in its application, and recent legislation does not purport to repeal any of the other provisions of the act, which must be construed as an entirety. The proper interpretation of the act cannot be reached by the consideration of isolated sentences or paragraphs or even isolated sections; but the act must be considered as one comprehensive declaration of intention by the Congress.

■ On March 3, 1933, Congress adopted certain amendments to the Bankruptcy Act known as sections 74, 75, 76, and 77 (11 USCA §§ 202–205). Section 74 of the Bankruptcy Act (11 USCA § 202) provides for composition and extension of debts of individuals. Section 75 (11 USCA § 203) provides for agricultural compositions and extensions, and was later amended by the addition of subsection (s) adopted June 28, 1934 (11 USCA § 203 (s). Section 76 (11 USCA § 204) extended the provisions of section 75 to persons secondarily liable on obligations covered by section 75. Section 77 (11 USCA § 205) provides for reorganizations of railroads engaged in interstate commerce. On June 7, 1934, Congress adopted section 77B of the Bankruptcy Act (11 USCA § 207) extending bankruptcy legislation to include corporate reorganizations; and on May 24, 1934, adopted section 80 (11 USCA § 303) relating to municipal debt readjustments. Finally, on June 28, 1934, the Frazier-Lemke Bill was adopted by Congress as subdivision (s) of section 75, 11 USCA § 203 (s).

It is manifest that these recent bankruptcy amendments, beginning with the acts adopted March 3, 1933, to the present time, do not constitute independent, complete statutes governing any, either, or all of the subjects or objects to which they respectively relate. They are merely parts of the general law of bankruptcies, and are to be construed, not as independent acts, but as a part of the complete expression by Congress of its exercise of authority to adopt uniform laws on the subject. Any doubt upon this proposition is dissolved by the language of subdivision (n) of section 75, 11 USCA § 203 (n), which provides that: "In proceedings under this section, except as otherwise provided herein, the jurisdiction and powers of the court, the title, powers, and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer and the jurisdiction of the appellate courts, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition or answer was filed."

Consequently, in any disposition of the pending case, the court is by Congress commanded to observe, and its jurisdiction is governed by, the general provisions of the Bankruptcy Act, which apply as "if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered."

The court is not justified, therefore, in presuming that by these recent amendments Congress has embarked upon an entirely new and wholly uncharted course of legislation and repealed by implication the previous acts dealing with bankruptcies. Rather, it must be assumed that Congress intended uniformity of legislation, and that it has attempted to amplify the procedure and grant authority for wider relief of more general application, but to preserve the limitations upon jurisdiction as previously established except where expressly extended.

■ The power of the court to declare an act of Congress unconstitutional is a part of the check and balance system of our national government. The underlying philosophy enunciated by Marshall and since his pronouncements commonly accepted is so familiar as to require no comment. It is obvious, however, that such power upon the part of one co-ordinate branch of the government to invalidate the acts of another such branch is of such serious character as to require that the judiciary should move with extreme caution and only after a showing of invalidity of the clearest character. A corollary resulting from these premises is that, if there is any question as to the construction of a federal statute, if it can reasonably do so, a court must follow such construction as sustains, rather than invalidates, legislation. In other words, only in the clearest of cases of unconstitutionality and in the absence of any possibility of reasonable construction resulting in constitutionality should the trial court exercise this, probably its most far-reaching and important function.

We must approach the construction of the sections of the Bankruptcy Act herein involved with these thoughts in mind, and determine, first, not how far Congress might

have gone in valid legislation, but how far, under proper construction of these amendments, it did go; and, second, whether the extent to which it did go, properly construed, is clearly beyond the limits of constitutional validity. To that end the court will not attempt to extend the application and scope of such legislation beyond the plain language employed in the act in question. Able judicial authorities have differed in other jurisdictions, not only upon the construction of the language of section 75, including subdivision (s), but also upon the constitutional validity of the provisions therein contained; but, as I read the statute, I am not required to determine whether Congress can legally require a mortgagee to accept a scaling down of his obligation under a decree of court or to consent to what the mortgagee deems as unreasonable extension of the time of payment of the indebtedness secured.

In Holt v. Henley, 232 U. S. 637, 34 S. Ct. 459, 460, 58 L. Ed. 767, the Supreme Court had under consideration the amendment of June 25, 1910, to the Bankruptcy Act (11 USCA § 75), giving trustees in bankruptcy, as to property coming into custody of the bankruptcy court, the rights of a creditor holding a lien. The court held that "before that amendment, Holt [the claimant] had a better title than the trustees would have got," but, speaking through Justice Holmes, the court said: "We are of opinion that the act should not be construed to impair it. *We do not need to consider whether or how far in any event the constitutional power of Congress would have been limited.* It is enough that the reasonable and usual interpretation of such statutes is to confine their effect, so far as may be, to property rights established after they were passed."

It is specifically provided by subdivision (k) of section 75, 11 USCA § 203 (k), that a "composition or extension shall not reduce the amount of nor impair the lien of any secured creditor, but shall affect only the time and method of its liquidation." In the absence of language persuasive of such fact, the court is not justified in presuming that this positive prohibition against reducing the amount of or impairing the lien of a secured creditor was by Congress intended to be repealed by implication by some later paragraph of the same section. I find in the language of the later amendment nothing to justify a holding that Congress did intend to repeal thereby any part of the section already in effect.

Congress intended to provide for the farmer a remedy whereby he may attempt to make a composition with his creditors. He may file a petition and make a proposal to his creditors for composition or extension. By subdivision (e) of section 75, 11 USCA § 203 (e), the court is directed to exercise such control over the property "as the court deems in the best interests of the farmer and his creditors" during a certain period of time, namely, "after the filing of the petition and prior to the confirmation or other disposition of the composition or extension proposal by the court." In other words, upon the filing of the petition by the farmer requesting an opportunity to submit a proposal to his creditors, the court is given control of his property, and by subdivision (o), 11 USCA § 203 (o), the farmer is protected against the institution or prosecution of foreclosure or other proceedings "at any time after the filing of the petition under this section [75], and prior to the confirmation or other disposition of the composition or extension proposal by the court." But it is provided further that upon proper petition made to and granted by the judge such proceedings against the debtor's property may be prosecuted after the hearing and report by the commissioner, without awaiting disposition of the composition proposal by the court.

A careful reading of paragraph (2) of subdivision (s) of section 75, 11 USCA § 203 (s) (2), discloses that Congress clearly intended to place under the control of the court all of the bankrupt's property, pending the bankrupt's efforts to effect a composition. The bankrupt may remain in possession of his property "subject to a general lien" as security to the trustee, *such a lien, however, to be subject to and inferior to all prior liens,* pledges or encumbrances."

It has been claimed that the following language in this paragraph (2) of subdivision (s): "Such prior liens, pledges, or encumbrances shall remain in full force and effect, and the property covered by such prior liens, pledges, or encumbrances shall be subject to the payment of the claims of the secured creditors holding such prior liens, pledges, or encumbrances up to the actual value of such property as fixed by the appraisal provided for herein," must be construed as compelling the secured creditor to reduce the amount of his debt and impair the lien of his security to the value which may be fixed by the appraisal. This, however, entirely ignores the specific language of the later paragraph 3, which provides that

only "with the consent of the lien holder or lien holders" can the debtor-bankrupt re-purchase any part of his property at the appraised price.

However, it is claimed that under paragraph (7), if the lienholder refuses to consent to the sale to the debtor, then the court shall stay all proceedings for a period of five years, put the debtor in possession under the control of the court, subject only to pay a reasonable rental therefor during the five-year period, and discharge the mortgage upon the debtor's paying into court the appraised value of the mortgaged property. But we must remember that the mandate to put the debtor in possession under a rental arrangement is not made applicable as a result of the lienholder's refusal to consent to the resale; on the contrary, it is applicable, if the property to be turned over to the debtor is property on which there is a lien, only when the lienholder has consented to the resale.

What facts require the court to stay proceedings and put the debtor in possession under a lease? Certainly not an objection by the lienholder to a sale by the trustee to the bankrupt nor a refusal by the lienholder to consent to such sale. There is no language in paragraph (7), of section 75 (s), 11 USCA § 203 (s) (7) prescribing such condition. On the contrary, the provision is that, "if any secured creditor of the debtor, affected thereby, shall file written objections to the manner of payments and distribution of debtor's property as herein provided for," then the court shall stay proceedings and put the debtor into possession under a rental contract. Now what is the "manner of payments and distribution of debtor's property as herein provided for?" If the mortgagee has consented to the resale at the appraised value, then, of course, the money coming into the hands of the trustee from the debtor's property, either by lease or sale, is a proper subject-matter of inquiry and concern to the lienholder who has so consented "as to the manner of payment and the distribution thereof." Obviously, the secured creditor is affected if he has consented to the resale to the debtor at the appraised price.

If the secured creditor has not consented to the resale at the appraised value, he may still file written objections to the manner of payments and distribution of the debtor's property other than that covered by his lien, and as to such property the debtor may be put in possession. But the secured cred-itor is not affected by the manner of payments and distribution of the debtor's property in so far as it includes any property upon which he has a lien, if in fact he has not consented to the sale.

The object of judicial interpretation of statutory law is to discover and give effect to the intent of the legislative body. Such intent is to be determined, defined and limited by examining the particular language used in the act. Where the words are clear, "courts are not at liberty to speculate upon the intentions of the legislature and to construe an act upon their own notions of what ought to have been enacted. The wisdom of a statute is not a judicial question; nor can courts correct what they may deem excesses or omissions in legislation, or relieve against the occasionally harsh operation of statutory provisions without danger of doing more mischief than good." "It is the duty of courts in construing statutes to seek for the intent of the lawmaking power in every legitimate way. But * * * first of all in the words and language employed, and if the words are free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation." Lewis' Sutherland, Statutory Construction, §§ 364–366.

"An interpretation of a statute which must lead to consequences which are mischievous and absurd is inadmissible if the statute is susceptible of another interpretation by which such consequences can be avoided. For this purpose all parts of a statute are to be read and compared. The question for the courts is, what did the legislature really intend to direct; and this intention must be sought in the whole of the act, taken together, and other acts in pari materia." Id. 367.

Applying these fundamental rules of construction, I cannot see how it can be said that by any language in paragraph (7) of section 75 (s), 11 USCA § 203 (s) (7), it was intended to nullify the plain provision of subdivision (k), 11 USCA § 203 (k), that a composition or extension "shall not reduce the amount of nor impair the lien of any secured creditor." Certainly, if the mortgagee can be bound by a contract of sale between the trustee and the bankrupt for a consideration less than the amount of the mortgage debt and compelled to accept same in discharge of his lien upon that which is sold, the result is to reduce the amount due a secured creditor.

Chief Justice Marshall in United States v. Wiltberger, 5 Wheat. 76, 95, 5 L. Ed. 37, used the following language: "The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words * * * in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so."

It has been earnestly contended by counsel for the mortgagee in this case that to construe the statute in question as binding the mortgagee by a sale of the mortgaged property to the bankrupt by the trustee without the consent of the mortgagee would, in effect, compel it to become a party to a contract in the making of which it has no voice; to be bound by a sale of the property to its mortgagor, at a price to which it does not agree, fixed by appraisers in whose selection it has had no voice, without public competition, a sale of the property to a purchaser whom the mortgagee did not select, in fact, a purchaser allowed to exercise an option to buy, but not obligated so to do, already in default on an existing contract, and to give such purchaser five years within which to elect to exercise his option. Such construction, it is insisted, would render the amendment invalid and unconstitutional as depriving the mortgagee not only of its property but of its liberty, without due process of law.

 The term "liberty" as used in the due process clause of the Federal Constitution (Amendment 5) includes not only freedom from duress but also the free and unfettered right and privilege to enter into valid contracts concerning property and to enjoy the legitimate fruits thereof; in other words, "liberty" includes the right of private contract. It is urged, therefore, that, if the act could properly be interpreted as insisted by the bankrupt, the mortgagee would be deprived of its liberty of private contract and compelled to be bound by the terms of a contract in which it is vitally interested and which it never agreed to accept. In other words, the mortgagee insists that the effect of the construction contended for by the bankrupt would be to hold that the Congress has delegated to the court the power, through its officer, to bind the mortgagee by a contract made by an officer of the court without the consent of the mortgagee. On the other hand, it has been argued that, as

has been authoritatively held, Congress has the power to impair the obligation of contracts through bankruptcy proceedings, authorized and conducted under acts of Congress, and that such construction goes no farther than has been already judicially determined Congress may lawfully go.

It is my considered judgment that to construe this statute as giving an officer of the court power to sell mortgaged property at a price less than the mortgagee itself is willing to pay for it, or upon terms other than could be procured by competitive bidding, would result in conferring upon the court much wider power than the Supreme Court has previously held might be lawfully delegated by Congress to courts of bankruptcy. True, the court may order the sale of the bankrupt's property free and clear of liens, but such a sale must be so made as to protect fully the rights of the mortgagee. As compared with such precedents, the contention of the bankrupt is that this statute requires the court, if the mortgagee refuses to consent to a sale of the property to the bankrupt, to put the mortgagor in possession for a period of five years and allow him an option during that period to buy the property at an appraised price and not at a competitive price or at an open sale. I doubt that Congress could go to such a limit in enacting bankruptcy legislation.

However, as I read this statute, Congress has expressly provided that the bankruptcy proceeding shall not operate to reduce the amount or impair the lien of any secured creditor without its consent. I cannot find anything in paragraph (7) of subdivision (s) of section 75 that can be construed to disclose any intention by Congress to modify or repeal that provision found in subdivision (k).

That paragraph (7) of subdivision (s) of section 75, 11 USCA § 203 (s) (7) is to be read in connection with all the other provisions of the Bankruptcy Act is clear from the language of the last sentence, viz.: "If the debtor fails to comply with the provisions of this subsection the court may order the trustee to sell the property as provided in this title." Logically speaking, such a sale would be controlled by the provisions of the entire act concerning bankruptcies, and at the time same is made the mortgagee would have the right to bid, and others in addition to the debtor would be possible qualified purchasers.

It is provided by paragraph (7) of subdivision (s) that, if any secured creditor of

the debtor, "affected thereby," shall file written objections to the "manner of payments and distribution of debtor's property as herein provided for," then the court, after setting aside the debtor's exemptions, shall stay proceedings for a five-year period, allow the debtor to retain possession of the property, under the control of the court, pay reasonable rental therefor, and during said five-year period purchase the property at an appraised price. It seems clear to me that only in cases where the mortgagee has consented to the sale of the property as provided by paragraph (3) of section 75 (s), 11 USCA § 203 (s) (3) is it within the class of secured creditors "affected thereby." And in this connection it is important to note that it is not only upon the terms specifically set out in paragraph (3) of subdivision (s) that a sale may be made by the trustee with the "mortgagee's consent," but such a sale, on consent of the mortgagee, may be made "upon such other conditions as in the judgment of the trustee shall be fair and equitable."

It is therefore easy to conceive that situations may arise where, upon terms which may be agreed upon between the trustee in bankruptcy and the bankrupt, the consent of the mortgagee may be obtained to such sale of the property. Then, of course, the secured creditor would have an interest in the "manner of payments and distribution of debtor's property as herein provided for." Section 75 (s) (7), 11 USCA § 203 (s) (7).

The language, "manner of payments and distribution of debtor's property as herein provided for," is without meaning, except by considering what is "herein provided for"; that is, what does the act "provide for" in relation to the "manner of payments and distribution of debtor's property?" We find the answer in the last sentence of paragraph (3) of section 75 (s), 11 USCA § 203 (s) (3), which provides that "the proceeds of such payments on the appraised price and interest shall be paid to the lien holders as their interests may appear, and to the trustee of the unsecured creditors, as their interests may appear, if a trustee is appointed." And by the same paragraph (3) a sale by the trustee to the bankrupt can only be made at the appraised price of property under mortgage "with the consent of the lien holder."

There is no occasion for a secured creditor to file written objections to the manner of payments or distribution of the debtor's property as provided in paragraph (7), unless there has been a sale of the property and the secured creditor is interested in the distribution of the proceeds of that sale. There can be no sale of mortgaged premises, except under the provisions of paragraph (3), which require as a condition precedent to a sale that the mortgagee consent thereto. If the mortgagee does not consent to a sale on terms proposed by the trustee and accepted by the bankrupt, then under paragraph (3) there can be no sale. Therefore, if the mortgagee does not consent to a sale to the bankrupt by the trustee, there is no occasion for the mortgagee to file any written objections under paragraph (7) except as hereinafter pointed out. It will be assumed, therefore, that in such case there would be no written objections filed by the mortgagee; and, obviously, unless such written objections should be filed by a secured creditor, the provisions of paragraph (7) would not become operative.

By construing section 75, including subdivision (s), as an entirety, and giving effect to each and all of the provisions therein contained, it is my opinion that it is not necessary to determine whether or not Congress could have given the authority which the bankrupt claims it did give to the court in this case; but that without the consent of the mortgagee no sale of the mortgaged property can be made to the bankrupt by the trustee under the provisions of paragraph (3); and that, if the mortgagee does not consent to any such sale, then the provisions of paragraph (7) will not apply to the mortgaged property.

It is clear that Congress intended to aid distressed farmers to rehabilitate themselves and that they are to be given the fullest opportunity to make composition settlement with their creditors. But, when they have made such settlements, it must be possible for them to carry them into effect.

It may well be that cases will arise where the value of the mortgaged premises is materially less than the mortgage incumbrance on the land, and where the lienholder would cheerfully consent to a sale of the mortgaged premises to the bankrupt by the trustee at a price much less than the amount of the mortgage debt.

Let us suppose, therefore, that a mortgagee consents to a sale of the mortgaged premises to the bankrupt for a consideration materially less than the amount of the incumbrance. The amount of the lien is reduced accordingly, and we must look then

to the act for provisions to aid the bankrupt to consummate the purchase.

By paragraph (2) of subdivision (s) of section 75, 11 USCA § 203 (s) (2), the mortgagee's prior lien and incumbrance remains in full force and effect, and the mortgaged property is subject to the payment of the claims of the mortgagee holding the prior incumbrance up to the actual value of the property, as fixed by the appraisal provided for in the act. It is then provided by paragraph (2) that: "All liens herein on livestock shall cover all increase, and all liens on real property shall cover all rental received or crops grown thereon by the debtor, as security for the payment of any sum that may be due or past due under the terms and provisions of the next paragraph [3], until the full value of any such particular property has been paid."

This clearly shows the necessity for reading this paragraph (2) in connection with the next succeeding paragraph (3), which defines the procedure for the sale of the property, and requires "the consent of the lienholder" to the terms and provisions of any such sale.

The intent of Congress to aid the farmer to rehabilitate himself is defeated if all of his live stock and the increase thereof, all the crops grown on the land by the debtor, and all rental income received by him, are to stand as security for the payment of the prior liens, with no provision whatever for the farmer to retain any portion of such live stock or increase or crops grown by him for his own sustenance and maintenance. Such construction would effect a lien in favor of the lienholder on the grain which the farmer might want to use for seed for a succeeding year's crop. As a result, after the farmer had labored all year, if he had accumulated some increase in his live stock and grown crops, the lienholder would be permitted, by act of Congress, put into effect by the court, to take it from him and leave him without support and maintenance. Such a result leads to "consequences which are mischievous and absurd," condemned by the authorities cited above as "inadmissible" in statutory construction, and compels, therefore, a construction of the act which shows the necessity of consent by the lienholder to the terms of any proposed sale of the mortgaged property to the bankrupt by the trustee.

Let us consider the situation from a somewhat different point of view. Assume that debtor owns 160 acres of land upon which he resides, incumbered by a mortgage for $10,000, in which homestead is waived, that he owns personal property, consisting of farm animals and machinery, incumbered by a chattel mortgage for $1,500, and that he has unsecured debts aggregating $5,000. He files a petition under section 75 (s), is adjudicated, and prays for an appraisal, for possession, and for authority to purchase all of the property and, by paying the purchase price, to make composition with his creditors.

The appraisers fix the fair value of the land at $12,000, and the debtor then asks the consent of his secured creditors to purchase all of his property for the sum of $14,500 on terms set forth in paragraph (3) of subdivision (s) of section 75 of the act, 11 USCA § 203 (s) (3), or upon such other terms as in the judgment of the trustee shall be fair and equitable. The question of exemptions is not involved as he has waived them in his mortgage.

The creditor holding the lien on the land refuses to consent. The debtor procures a temporary injunction against foreclosure, and prays for an order to pay reasonable rental upon all of his property for the period of five years, in accordance with paragraph (7) of section 75 (s), 11 USCA § 203 (s) (7), and at the end of that period to pay to his creditors, as purchase price, the appraised or reappraised value of the property.

What are the respective rights of the debtor, the creditors agreeing to the purchase, and the nonassenting holder of the lien upon the real estate?

Consider first the rights of the owner of the real estate mortgage. Subdivision (k) of section 75, 11 USCA § 203 (k), provides that the amount due on lien of a secured creditor shall not be impaired. Are such rights impaired if the court enters an order conformable to this act?

By the appraisal, the fair value has been fixed. The mortgagee may object to it and present evidence, or a creditor may object and present evidence. An agreement to sell the real estate to the debtor is not consummated, for the lienholder has not consented. The court has, however, put the debtor in possession of the property, including chattels in which there is an equity, the other creditors consenting. The holder of the real estate mortgage now comes forward and objects to the manner of payments and distribution of the debtor's other property, because he contemplates a deficiency on foreclosure.

Solely by making these objections, the secured creditor under paragraph (7) of section 75 (s), 11 USCA § 203 (s) (7), has elected to leave all the property in the possession of the debtor and to agree that the debtor may pay a reasonable rental therefor for five years, that this rental shall be distributed among secured and unsecured creditors as their interests may appear, and that at the end of five years, if all payments are met, he shall be paid the appraisal value. Under subdivision (k) of section 75, 11 USCA § 203 (k), his security is not impaired; therefore the lienholder is entitled to receive out of this reasonable rental interest according to the covenants of his mortgage and to have performed the other obligations of such mortgage throughout the extended period of five years. As a corollary, the debtor is obliged to make these payments as well as the payments the other creditors have agreed to receive, or he is in default and liable to have his property sold by the trustee as in other bankruptcy proceedings.

However, suppose the mortgagee or lienholder does not object as indicated in paragraph (7) of section 75 (s), 11 USCA § 203 (s) (7), but does not desire to have the debtor in possession and asks possession of the land or management of same by a receiver. The bankruptcy court has taken jurisdiction of the cause; it has authority to prevent foreclosure for a reasonable period. It may order property sold free of liens. It may thus wipe out redemption periods or it may abandon incumbered property in favor of the mortgagee. When there is no consent to sale and no objection by the lienholder, the debtor has no binding contract with the trustee to buy the incumbered property at the appraised value, because the mortgagee has not consented. The mortgagee has no rights in the bankrupt's other property until and unless a deficiency comes into existence; and under this act he has no right to prove a deficiency against the debtor's other property because he has not elected to put in motion the procedure that would entitle him to participate, viz., to object in writing to the manner of payment and distribution of the debtor's property; in other words, he is confined to the security that he took in the first instance and refuses to participate in the other property, because in that event his manner of payment would have been changed from the mortgage provisions to the rates and manner specified in paragraph (7). The mortgaged land is an asset in bankruptcy that may be disposed of by the trustee under ordinary bankruptcy practice by sale free and clear of all liens. And this power is not made contingent upon proof of an excess of value over the amount of liens. After a reasonable time, the mortgagee is entitled to possession or to have the property sold, or abandoned or to foreclose in a proper court.

What constitutional rights are involved by such procedure? The only likely answer is that his lien is limited to the appraised value of the land. However, the appraisal of the land is of no limiting character as against the mortgagee unless he consents to a sale to the debtor. The basic reason for an appraisal is to ascertain how far the property at a fair value will go in payment of the debtor's obligations and to apply this value to the debts and to effect a discharge for the debtor from payment of the balance of his indebtedness. Therefore, if the trustee sells the land without redemption and free of liens, the creditor, trustee, or debtor may bid enough to discharge the lien. If the bid is not large enough to satisfy the lien, the lienholder is compelled to take what the property brings and cannot prove his deficiency against the balance of the debtor's property because of his failure to make written objections as specified in paragraph (7) of section 75 (s), 11 USCA § 203 (s) (7); in other words, the appraised value is only binding upon the mortgagee when or if (a) he consents to the debtor becoming a purchaser upon the statutory terms, or (b) when he objects to the manner of distribution of the bankrupt's other property.

The same logical result will be reached by an application of these principles to the rights of the holder of the lien on chattel property. The only class, aside from the debtor who will benefit is that of the unsecured creditors, who may, by reason of the lienholders agreeing to the debtor's purchase of the property, be induced to finance the bankrupt and possibly to take over the claims of his secured creditors and thus eventually benefit through the industry of the debtor or a rise in property value. Otherwise they have no relief; the farmer being exempt from involuntary bankruptcy. The exercise of judicial discretion in the administration of this act in accordance with the general provisions of the Bankruptcy Act (11 USCA), and the special provisions of section 75 (11 USCA § 203) must of necessity be considered as having been in the mind of Congress when this amendment was enacted.

The mortgagee has filed in this court bill to foreclose the mortgage hereinbefore

discussed, and upon due hearing a receiver has been appointed, who has entered into the possession of the land and has leased the same to the bankrupt. It is contended by the mortgagee that the receiver should remain in possession of the property.

Under the provisions of these amendments, the jurisdiction of the court over all property of the bankrupt is full and complete. Such has been true under the prior bankruptcy act, and under the recent amendments that jurisdiction has been widened in certain respects. The court takes jurisdiction now, whether the foreclosure proceedings were instituted after bankruptcy or within four months prior to bankruptcy or within any unlimited time prior to bankruptcy. All this is pointed out in Re Jacobs (D. C.) 7 F. Supp. 749, which had to do with section 74, 11 USCA § 202, but the language of which I deem applicable to section 75, 11 USCA § 203, in view of the language of subdivision (n) of section 75, 11 USCA § 203 (n).

In Gross v. Irving Trust Co., 289 U. S. 342, 53 S. Ct. 605, 606, 77 L. Ed. 1243, 90 A. L. R. 1215, the court said: "Upon adjudication of bankruptcy, title to all the property of the bankrupt, wherever situated, vests in the trustee as of the date of filing the petition in bankruptcy. The bankruptcy court has exclusive jurisdiction, and that court's possession and control of the estate cannot be affected by proceedings in other courts, state or federal. Isaacs v. Hobbs Tie & T. Co., 282 U. S. 734, 737, 51 S. Ct. 270, 75 L. Ed. 645, and cases cited. *Such jurisdiction having attached, control of the administration of the estate cannot be surrendered even by the court itself."* (The italicizing is that of this court.)

In the earlier case of Isaacs v. Hobbs Tie & T. Co., 282 U. S. 734, at page 737, 51 S. Ct. 270, 271, 75 L. Ed. 645, the court said: "Upon adjudication, title to the bankrupt's property vests in the trustee with actual or constructive possession, and is placed in the custody of the bankruptcy court. Mueller v. Nugent, 184 U. S. 1, 14, 22 S. Ct. 269, 46 L. Ed. 405. The title and right to possession of all property owned and possessed by the bankrupt vests in the trustee as of the date of the filing of the petition in bankruptcy, no matter whether situated within or without the district in which the court sits. Robertson v. Howard, 229 U. S. 254, 259, 260, 33 S. Ct. 854, 57 L. Ed. 1174; Wells & Co. v. Sharp (C. C. A.) 208 F. 393; Galbraith v. Robson-Hilliard Grocery Co. (C. C. A.) 216 F. 842. *It follows that the bankruptcy court has exclusive jurisdiction to deal with the property of the bankrupt estate.* It may order a sale of real estate lying outside the district. Robertson v. Howard, supra; In re Wilka (D. C.) 131 F. 1004. When this jurisdiction has attached, the court's possession cannot be affected by actions brought in other courts. White v. Schloerb, 178 U. S. 542, 20 S. Ct. 1007, 44 L. Ed. 1183; Murphy v. John Hofman Co., 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327; Dayton v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190. * * * Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, *it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation.* In re City Bank of New Orleans, 3 How. 292, 11 L. Ed. 603; Houston v. City Bank of New Orleans, 6 How. 486, 12 L. Ed. 526; Ray v. Norseworthy, 23 Wall. 128, 23 L. Ed. 116; In re Wilka, supra; Nisbet v. Federal Title & Trust Co. (C. C. A.) 229 F. 644. * * * *The court in which foreclosure proceedings are instituted is without jurisdiction, after adjudication of bankruptcy, to deal with the land or liens upon it save by consent of the bankruptcy court."*

Thus it is the duty of the bankruptcy court, where its jurisdiction is properly invoked, to take exclusive jurisdiction of all the property of the bankrupt. In the interest of uniformity, if such duty is not mandatory, but at the most only discretionary, prevention of disorder in litigation and uniformity in administration will be best promoted by the exercise of that paramount jurisdiction of the bankruptcy court in all ordinary instances.

Consequently, it will be the duty of the receiver in this foreclosure case to surrender to the trustee in the bankruptcy case all of his custody, possession, and control of the property, including the lease now existing upon said premises. The trustee in bankruptcy is directed to assume such control, custody, and possession, to adopt the lease heretofore made to the bankrupt, to make collections thereon and to hold the proceeds until the further order of the court as to proper distribution.

The act seems to contemplate a rental to the bankrupt wherever possible at a fair and reasonable rental, and, inasmuch as the bankrupt has voluntarily entered into this lease at a comparatively recent date, it will

be presumed by the court, in the absence of evidence to the contrary, that same is reasonable and fair.

The mortgagee's rights in the premises and rents and profits therefrom, under and by virtue of the mortgage, will be protected by orders entered after proper application shall be made. It may be that the facts are such that this debtor's best interests would be served by a complete renunciation of all property interest upon his part; but the court is desirous of promoting, if possible, the spirit of opportunity for rehabilitation evidenced by Congress in this legislation. Consequently the present status of the foreclosure will be maintained until the further order of the court.