## JONES v. KENDALL.

### In re HAYNSWORTH et al.

Circuit Court of Appeals, Fourth Circuit.
July 1, 1929.

No. 2822.

George H. Edwards, of Darlington, S. C., and L. D. Lide, of Marion, S. C., for appellant.

F. L. Willcox, of Florence, S. C. (R. W. Sharkey and Willcox & Hardee, all of Florence, S. C., on the brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and WEBB, District Judge.

WADDILL, Circuit Judge. This is an appeal by T. W. Jones, a creditor of the bankrupt firm of Haynsworth & Stuckey, from certain orders and decrees of the United States District Court alleged to prejudicially affect his rights as such creditor, and providing for the sale of securities held by him as collateral for the payment of the indebtedness due him by the bankrupt firm. A brief summary of the facts incident to the creation of the indebtedness and the furnishing of the collateral security for the payment thereof will be given, with a view to a more intelligent understanding of the merits of the controversy:

On May 23, 1927, T. B. Haynsworth and M. C. Stuckey, as copartners trading as

Haynsworth & Stuckey, and as individuals, were adjudged bankrupts in the United States District Court for the Eastern District of South Carolina, on their voluntary petitions filed in said court. They duly filed their schedules, as required by law, and on June 7, 1927, J. C. Kendall was appointed trustee of said bankrupt estates; on June 3, 1927, J. M. Lawton Company, a corporation, and J. M. Lawton, individually, were adjudged bankrupts, on their voluntary petitions, and duly filed their schedules as required by law; and on June 17, 1927, R. W. Sharkey was appointed trustee of their bankrupt estates.

During the month of June, 1927, J. C. Kendall and R. W. Sharkey, trustees of the several bankrupt estates, filed, simultaneously, reports setting forth that they had been offered by one J. J. Lawton and the Commercial & Savings Bank, of Florence, S. C., $105 per share for 275 shares of the capital stock of the Carolina Building Material Company, 30 shares of which were owned prior to bankruptcy by the partnership of Haynsworth & Stuckey, and 130 shares by T. B. Haynsworth, individually, and 115 shares by J. M. Lawton Company, or J. M. Lawton. These offers were conditioned upon the sale and delivery of the entire block of 275 shares of stock, although a part of the stock was owned by Haynsworth & Stuckey, part by T. B. Haynsworth individually, and a part by J. M. Lawton Company, or J. M. Lawton.

Due notice of the proposed sale of stock was given to the creditors, and thereupon T. W. Jones duly appeared, asserting claims amounting to $16,000 against the bankrupts, Haynsworth & Stuckey and T. B. Haynsworth, individually, and objected to the proposed sale of the stock as requested by the trustees, alleging that he was the holder of 20 shares of Carolina Building Material Company stock, standing in the name of Haynsworth & Stuckey, and 75 shares of said stock standing in the name of T. B. Haynsworth individually, which had been assigned to him as collateral security for debts and obligations due him by the bankrupts. Jones objected to the acceptance of the offer for the total of 275 shares of stock held by the several bankrupt estates, and insisted that the same could not be sold as a whole, but should be separately sold according to the interests of each estate therein, and that the 115 shares of stock, which the bankrupt Lawton estate held as collateral for indebtedness due it, could not be sold along with the 95 shares held by the exceptant, Jones, as collateral security for the payment of debts due him; that to do so would result in a violation of his rights in the premises, and in denying to him the right he possessed under the law to an opportunity to bid in the securities held by him at a reasonable price on account of the indebtedness due him.

Said Jones further asked for a valuation of the collateral held by him, with a view of properly applying the value of such collateral to the debts secured thereby, which he averred to be the amount of a promissory note dated November 30, 1926, in favor of Mrs. E. B. Douglas, viz. $8,124.03, and also on a similar indebtedness of $6,735.66, which latter amount was made up of certain notes of Haynsworth & Stuckey and T. B. Haynsworth individually, aggregating $5,500, with interest and attorney's fees added.

The referee took considerable testimony bearing upon the question of value of the Carolina Building Material Company stock, as well as with a view of showing the proper disposition of the same under the circumstances. On July 2, 1927, the referee filed his report, in which he found that it was necessary for the protection of the creditors of both estates that the offer of $105 per share for the 275 shares of stock held by the bankrupt estates should be accepted, and the stock disposed of as an entirety, and that no other conclusion could be reached, having regard to the best interests of the bankrupt estates. It appears from the recitals of the referee's report that this was in accord with the understanding between the parties before, as well as after, bankruptcy. It also appears that, while the stock had been appraised at $130 per share, no offer for the same was received at a greater price than the $105 offered for the entire block of stock.

The said Jones thereupon filed his petition, asking that the proceedings of the referee be reviewed, which was granted, and a further reference was made to the referee at the trial court's suggestion, with a view of enabling the judge to hear and determine the whole matter at one time. Upon this latter reference, the referee filed his further report of April 11, 1928, adhering to his former opinion as to the sale of the stock as a whole, in which he determined that the 95 shares of stock held as collateral by the petitioner Jones was so held as security for the payment of the Douglas note mentioned, as well as for the payment of three notes aggregating $5,500, which, with interest and attorney's fees added, amounted to $6,735.66; and the referee held that the petitioner Jones was entitled to the allowance for attorney's fees as claimed. To this report of the referee,

the two trustees in bankruptcy for the several bankrupt estates jointly excepted. The case was thereupon submitted to the District Court upon the several exceptions to the referee's report, and the learned District Judge, after full consideration, reached the conclusion to affirm in part and reverse in part the referee, stating his reasons therefor as follows [34 F.(2d) 339]:

"My conclusion as to the order of the referee dated April 11, 1928, is that it should be affirmed in part, and reversed in part; that is to say: First, in so far as the said order adjudges that T. W. Jones is entitled to hold the security pledged as collateral to the Douglas note for the amount of the Douglas note, with interest, it should be affirmed. Second, in so far as it adjudges that T. W. Jones is entitled to hold the said securities for attorney's fees pursuant to the Douglas note, it should be reversed. Third, in so far as it holds that 'T. W. Jones is entitled to hold the securities for the payment of the other debts and liabilities of Haynsworth & Stuckey to him, including notes for the aggregate amount of $5,500, with interest and attorney's fees,' it should be reversed. Fourth, in so far as the said order adjudges that the assignment of the equity in the said 95 shares of stock made to the Commercial & Savings Bank is null and void as a preference, it should be sustained, with the proviso, however, that the trustee may move before the referee for an order permitting him to hold said transfer for the benefit of the estate as hereinabove provided.

"This brings us now to a consideration of the petition of T. W. Jones to review the order of the referee (dated July 2, 1927) directing the sale of the 95 shares of stock held as collateral to the Douglas note along with the other shares formerly owned by Haynsworth and Lawton, in a block. It appears that T. W. Jones objected to this form of sale and demanded that the stock be sold separately, and that the Carolina Company joined with him in this objection. The objection of Mr. Jones appears to be twofold: First, because he had a right to protect his interest in collecting from the proceeds of the sale of the 95 shares, not only the Douglas note itself, but the three Haynsworth and Lawton notes, which he claimed should be paid from those proceeds; and, secondly, that in any event as a general creditor he would have the right to object to such a sale, and he has filed a petition to review. The objection of the Carolina Company, an unsecured creditor, appears to be simply on the ground that, as such unsecured creditor, the stock of this bankrupt estate should be sold separately and apart and not mixed with the sale of any other bankrupt estate. The Carolina Company, however, filed no petition to review. No other creditor of any of the bankrupt estates is making any objection to the proposed sale.

"If this court had found that Mr. Jones was entitled to collect from the proceeds of the 95 shares of stock, not only the Douglas note, but also his other three notes, then I think that his objection to the proposed sale would have been well taken. My view is that, where a creditor has security for his debt or debts, he has a right to have that collateral itself sold separate and apart from any other collateral, so that he may have an opportunity to bid it in and protect himself in this way, and should not be compelled to make a bid on that property in connection with other property, even though of the same class.

"But that is not the situation here. Here the court has found that Mr. Jones is not entitled to collect the three notes referred to, aggregating $5,500, from the collateral which secured the Douglas note. It is conceded by all of the parties that the sale proposed by the trustee will pay the Douglas note in full, principal and interest. So far as being a secured creditor is concerned, therefore, Mr. Jones is not an aggrieved party, and has no right to complain of or object to the proposed sale. The Douglas note is being paid in full, and any disposition of the property in order to create an equity for the benefit of the unsecured creditors is no concern of the holder of the secured note which is so paid.

"Now, can he complain because, as he alleges, he is a general creditor, or can the Carolina Company, as a general creditor, complain? Ordinarily, I should say that a particular piece of property belonging to a particular bankrupt should, as a general rule, be sold by itself and not sold in conjunction with the property of another bankrupt estate or another individual. But I do not entertain any doubt but the bankrupt court may, in the interest of creditors, order the trustee to make a sale of such a nature. For example, suppose a bankrupt estate owns a parcel of land or a block of stock in a concern, which can be sold, say for a certain sum; suppose, however, the trustee ascertains that if he will join with the owner of another piece of real estate which adjoins it, or, in case of stock, with another owner of similar stock, he can sell it at an increased price and bring in more money to the bankrupt estate by such sale than by a separate sale, I see no legal reason why it cannot be done, and, if the facts war-

rant it, why it should not be done. It is not against the interests of the unsecured creditors, but is to their interest, and tends to bring in a larger sum to be distributed among them.

"Now, in this particular case, it is clear, and is practically conceded, that this 95 shares of stock belonging to the present bankrupt estate can be sold, with the other stock, at a sum which will not only pay off the Douglas note, but secure a surplus which will go for the benefit of the unsecured creditors. It is also clear, and practically conceded, that unless sold in that way—that is, if sold separately—it will not bring near as much, and, indeed, will probably not bring more than enough to pay the Douglas note. These are cogent reasons why the sale should be approved, unless some injury is shown by some person having a right to complain. I have shown that the secured creditor has no right to complain, because he is paid in full. It may be said that the unsecured creditors would prefer to bid on the stock separately, and not care to bid when it is sold in connection with another block, when they must take the whole. But there is no showing here that anybody desires to purchase that 95 shares separately, except Mr. Jones. The sale proposed is beneficial to the unsecured creditors, and I do not see how either they or Mr. Jones have any right to complain.

"In addition to this, while not controlling, it is to be observed that in this particular case the parties themselves, before their bankruptcy, had an agreement in writing (and, prior to the written agreement, an oral agreement to the same effect) that this particular stock should not be sold separately, but should be disposed of in a block, as it was recognized that its value depended largely on there being sufficient in the block to control the corporation.

"The whole matter, as a practical situation, may be summed up in a few words: If the 95 shares are sold separately, there will practically be nothing for the unsecured creditors from that stock. If they are sold in connection with other stock, as proposed by the order of the referee, there will be a surplus to be distributed among the unsecured creditors of the bankrupts. I think, therefore, that the referee's order for the sale of the stock in question should be upheld."

Little need be added to what is said by the trial court in support of the rulings made by it, as the court's conclusions are in the main clear and conclusive upon the questions determined. The trial court was entirely right in holding that, while the assignment of the shares of stock held as collateral on account of the Douglas note mentioned in the record was binding and enforceable as to that indebtedness, the same was not liable for the other notes held by the exceptant, Jones, aggregating $5,500 and interest, and hence the referee's report in this particular should be rejected, and the action of the District Court approved.

Regarding the question of counsel fees, which the referee approved for 10 per cent. of the full amount of the Douglas note, $812.-40, and which was rejected by the District Court, we do not find ourselves in entire accord with either the District Court or the referee. We think the court should not have rejected the item for counsel fees entirely; but that some amount should have been allowed on account thereof. We therefore fix the amount of such counsel fees at $250, which should be deducted from the proceeds of sale of the collateral stock held on account of the Douglas note, and should be sufficient to cover the services rendered by counsel, and we think that no allowance for a greater sum should be made.

Considering the propriety of the ruling disposing of the stock held by the trustees of the separate bankruptcy estates, we are of the opinion that the same was clearly right, certainly under the circumstances here. Indeed, there would seem to be no valid reason why, in two bankruptcy causes (two equitable proceedings), bankruptcy being a litigation in which substantial right and justice, rather than technical form, should control (Robertson v. Howard, 229 U. S. 254, 261, 33 S. Ct. 854, 57 L. Ed. 1174), securities of the same character, and in which both estates were interested as to the outcome of the handling thereof, should not have been disposed of in two cases heard together for that particular purpose. Such would be the common practice in equity causes, and upon the conclusion of the two cases, thus considered together in respect to the disposition of the assets, the litigation would thereafter be proceeded in separately, with a view to its final determination.

This would seem to be the correct course in any case of the kind where there are dual interests, but plainly it would be proper here, where at the inception of the several interests it was agreed and understood that the securities represented by the owners of the two partnerships would be simultaneously disposed of as a whole. This was a wise precaution, for the benefit alike of the interests of both bankrupt estates. To fail to have so wise a provision respected and carried out,

because of the supposed lack of equitable jurisdiction, would be technical in the extreme, and would result in gross injustice to the parties in interest. It seems to us entirely clear, upon the record and evidence in this cause, that the sale proposed by the trustees of the stock as a whole was beneficial to the bankrupt estates, and the general creditors of Haynsworth & Stuckey, and that the exceptant, Jones, made no showing that any offer he may have made would have been more beneficial to that estate.

The action of the referee in ordering the acceptance of the offer of $105 per share for the entire block of 275 shares of stock involved in the two bankrupt estates is accordingly approved, and the action of the District Court thereon affirmed, as is the action of the referee in applying the proceeds of the stock hypothecated on account of the Douglas note. The referee's action in applying a part of the proceeds of sale of such collateral to the $5,500 Jones notes is reversed, and the court's action in respect thereto approved. This court reverses the action of the District Court in disallowing the 10 per cent. attorney's fees on the Douglas note, and in lieu thereof holds that attorney's fees of $250 only should be allowed from the proceeds of sale of the stock.

We also affirm the referee's action in holding null and void as a preference the equity in the 95 shares of stock in favor of the Commercial & Savings Bank, with this proviso, that the trustee may move the referee for an order permitting the holding of such equity for the benefit of such bankrupt estate.

Affirmed in part.

Reversed in part, and remanded.