## In re RAPIER SUGAR FEED CO.
### No. 1683.

District Court, W. D. Kentucky,
Owensboro Division.
Dec. 28, 1935.

Cary, Miller & Kirk, of Owensboro, Ky., for petitioner.

Sandidge & Sandidge, of Owensboro, Ky., for trustee.

HAMILTON, District Judge.

This proceeding is pending before the court on referee's certificate on review of the petition of the Central Trust Company.

On October 23, 1935, Richard H. Slack, trustee for the bankrupt, pursuant to an order of the court, sold at public auction the real and personal property of the bankrupt.

Before conducting said sale, it was properly advertised by printed notices and copy of said notices mailed to each creditor of the bankrupt ten days prior thereto. The order of sale and notice thereof provided, "Any one desiring to bid on the above described real estate will be required to deposit before the start of the sale a certified check payable to the Trustee in the sum of $2,500.00, which check shall be forfeited to the Trustee for the benefit of the estate of the Bankrupt in the event such bidder fails to carry out his bid." It was also provided in reference to personal property that "any one desiring to bid on the above described personal property as a whole will be required to deposit before the start of the sale a certified check payable to the Trustee in the sum of $500.00, which check shall be forfeited to the Trustee for the benefit of the estate of the Bankrupt in the event such bidder fails to carry out his bid."

The identical property had been previously sold on September 6, 1935, and the high bidder at that sale refused to accept the property; therefore, on the resale, the order of sale provided for deposits by prospective bidders as above stated.

Before the sale, but two prospective bidders made deposit as required under the order of sale, one the Central Trust Company of Owensboro, Ky., and the other William O'Bryan. The sale was conducted by the H. L. Post Land Company, public auctioneers of Pittsburgh, Pa. The Central Trust Company was the highest bidder for both the personalty and the realty. It acquired the former for $3,500

and the latter for $28,000. The trustee filed report of sale with the referee on October 23, 1935, which laid over for exceptions until November 5, 1935, at which time no exceptions were filed and the sale was confirmed by the referee.

On November 12, 1935, before taking possession of the property, the purchaser thereof, the Central Trust Company, filed with the referee a petition to set aside the trustee's report of the sale and the order confirming it, and as grounds therefor alleged that prior to the sale, it had properly qualified as a bidder by duly executing and delivering to the trustee its certified check for the required amount, and on October 23, 1935, it appeared on the premises of the Rapier Sugar Feed Company to bid upon the property being sold; that only one other proposed bidder, William O'Bryan, also qualified as a bidder at said sale, and at the time of the bidding there was no qualified bidder other than this petitioner, the Central Trust Company, and the said William O'Bryan, and that this fact was known to the auctioneer who conducted the sale.

The petitioner says when this property was offered for sale by the auctioneer, this petitioner bid therefor the sum of $20,000; that no bid was offered by any one other than this petitioner; that the only other qualified bidder, William O'Bryan, did not make nor offer any bid, nor did any other person present make or offer any bid; but that the auctioneer pretended to receive a bid of $21,000, and announced to petitioner such bid; and that this was done by the auctioneer for the fraudulent purpose of unfairly and improperly inducing this petitioner to make a higher bid, and that petitioner, not knowing of the deceit and fraud practiced upon it, but supposing the auctioneer had a good faith bid and relying upon his statements and reports, bid the sum of $22,000, which it would not have done except for said fraud and deceit; that said auctioneer in like manner again falsely and fraudulently stated and pretended to this petitioner and to those present, there being a large number of persons present, that he had received a further and higher bid.

Petitioner says that it was again deceived into believing and did believe and rely upon the statements and fraudulent and deceitful representations of the auctioneer that such higher bid was received by him and had been made and offered by someone other than petitioner; and in like

fraudulent and deceitful manner for the continued purpose of deceiving this petitioner and perpetrating a fraud upon it, the auctioneer, as often as this petitioner would make and offer a bid for said property higher than the pretended bid of another, would fraudulently and falsely announce and pretend that a still higher bid had been made and offered, until in that manner this petitioner had bid the sum of $28,000, one bid after another for seven or eight successive bids made subsequent to its first bid, all upon the false pretense and fraudulent and deceitful representations of the auctioneer.

Petitioner says it did not discover and could not detect the deceit and fraud practiced upon it, and did not know of the unfair practice indulged in by the auctioneer, but relied upon his statements and announcements publicly made that he had received the several bids from other bidders, and but for his reliance upon these statements and representations of the auctioneer he would not have bid a sum in excess of $20,000 and would have been entitled to purchase said property at that sum, and in fact became and was the highest and best bidder at said sale at the sum of $20,000.

Petitioner says it did not discover the deceit and fraud practiced upon it until after the aforesaid sale was confirmed to it, when it at once filed a petition to set aside the trustee's report of sale and the order confirming same.

The petitioner says the property purchased by it does not have an actual fair market value in excess of the sum of $20,000, and this petitioner bid upon said property in part to protect itself because of a large indebtedness owed it by the bankrupt; that the bankrupt's property is such that the purchaser must necessarily take a heavy risk in trying to realize from a resale thereof $20,000, though it has an actual value substantially in excess of said sum, but is largely nonmerchantable and its care and protection, oversight and management necessarily requires substantial outlays of money, thereby greatly reducing its fair market value and salability, and that it has been damaged by the fraud and deceit practiced upon this petitioner in the sum of $8,000.

The trustee denied that only one other proposed bidder qualified at said sale, or that at the time of the bidding there was no other qualified bidder than William O'Bryan or said petitioner, or that this alleged fact was well known, or known at all, to the auctioneer conducting said sale.

Said trustee says it is true that when the real estate was offered for sale by said auctioneer, the petitioner and others bid therefor the sum of $20,000, but denies no other bid was offered by any one else or that said O'Bryan did not make or offer any bid, or that he was the only other qualified bidder, or that no other person present made or offered any bid, or that the auctioneer pretended to receive a bid of $21,000, or the petitioner would not have then bid $22,000 for said property but for the alleged fraud or deceit claimed to have been practiced by said auctioneer or practiced on the petitioner; or that said auctioneer, in like manner, again falsely or fraudulently stated or pretended to the petitioner, or those present, that he had received a further or higher bid or petitioner was thereby deceived or misled into believing a higher bid had been received by him or had been made or offered by someone other than the petitioner. He denied that the auctioneer made any fraudulent representations with respect to the higher bid, or that he fraudulently or falsely announced or pretended a higher bid had been made or offered until the petitioner had bid the sum of $28,000. He denies that any fraud or deceit whatsoever was practiced upon petitioner in connection with said sale. He also denies that the property purchased by petitioner at the sale does not have a fair market value in excess of the sum of $20,000, or that the petitioner has been damaged in the sum of $8,000 or at all.

The testimony shows that only two bidders qualified by putting up a certified check, and that the Central Trust Company started the bid at $20,000, and continued up to $28,000, at which price it purchased the property. The Central Trust Company was the only qualified bidder bidding at the sale. Testimony for the purchaser also shows that about fifty people attended the sale, and the auctioneer announced he was receiving bids from other people. The testimony also shows the Central Trust Company, at a previous sale of this property, bid $30,000, but there was a higher bidder who refused to carry out the terms of the sale, and the court ordered a resale.

The testimony shows the moving up of the bids from $20,000 to $28,000 was done in the usual way, the auctioneer crying off

the succeeding bids until the final bid of $28,000 was reached. Some of the witnesses testified that the auctioneer announced there would have to be certified checks deposited with the trustee by the bidders to be qualified, and the trustee said there were two qualified bidders there.

One of the witnesses testified that a bid could be made by a wink, nod of the head, or by gesture of the hands. No witness, other than Mr. Short, bidding for the Central Trust Company, testified that he made a bid on this property. Mr. Short testified he inquired of the auctioneer who was making the other bids, and he stated "the bid was against me." He also stated he made no other effort to find out who the bidders were at the time of the sale.

Several of the witnesses testified they were present at the sale and observing it carefully, and saw no other bidders, although the auctioneer was crying bids other than those of the purchaser.

The trustee said he watched the sale closely, but he did not know who was bidding other than Mr. Short for the Central Trust Company, though he did ask the auctioneer and he nodded to the right where Will O'Bryan, the only other qualified bidder was standing. O'Bryan testified he made no bid.

The auctioneer testified he had thirty-one years' experience in his profession, and had conducted sales of properties ranging from $1,500,000 to $28,000,000, and had conducted sales at public auction under court orders and otherwise in more than half the states in the Union. He stated he received a flat fee of $150 to conduct the sale in question, and had conducted the previous sale of the same property which was not confirmed because of the purchaser's failure to comply with his bid. He stated he read the sale bill before the sale and was familiar with its terms, which required prospective bidders, in order to qualify, to deposit with the trustee $500 for the personal property and $2,500 for the real property, but he did not know how many had qualified to bid before the sale. He stated the sale started about 10 o'clock in the morning and continued until 4 in the afternoon, the real estate being sold last. He stated he first received a bid of $20,000, which was made by Mr. Short, and that three or four people bid on the property, some by a nod of the head, and that Mr. Short increased the bid each time by raising his hand, until $28,000 was reached,

at which time he stopped receiving bids and told the crowd the property was going cheaply and he would give them a few minutes to think it over. In the meantime, he consulted with Mr. Slack, the trustee, and was told by him to complete the sale. He stated he only knew four people attending the sale, and that Mr. Short was the only bidder of his acquaintance. The witness stated that about one hundred people were present, that he stood under the roof over the driveway, and the crowd was on the opposite side of the building. He stated that one of the bidders, a stranger to him, was about five feet ten or eleven inches tall and weighed about 180 to 190 pounds; that the other bidder, also a stranger, was taller, but thinner, and each bid by a nod of his head, which was one of the usual ways of bidding, and that he did not inquire of either of them if they were qualified bidders, but at the time of the intermission he told Mr. Slack the amount of the highest bid and that he asked him who the bidder was, and he told him Mr. Short. The trustee then told him to knock the property off to Mr. Short, which he did when he resumed the sale. He stated that Mr. Short did not inquire of him who the bidders were or as to their qualifications, nor did any one else, and that he made no effort at any time to ascertain who they were, believing that was a matter for Mr. Slack, the trustee, to decide.

■ The petitioner contends that the confirmation of the sale by the referee is not a finality, and in fact until the sale has been confirmed by the court it will be considered as though the trustee's report thereof was pending, and strongly relies on In re Wolke Lead Batteries Company, 294 F. 509 (C.C.A.6) in support thereof. The facts in the cited case are unlike the one at bar. In that case the exceptions were filed before the sale was confirmed by the referee, which he overruled, and a review was asked of the referee's order. In the case at bar no exceptions were filed before the referee until after the sale was confirmed. The confirmation by the referee was sufficient to overcome all irregularities, if any, in the sale. See Robertson v. Howard, 229 U.S. 254, 264, 33 S.Ct. 854, 57 L.Ed. 1174.

■ After a judicial sale has been confirmed by the court or the referee and the equitable title has thereby vested in the purchaser, public policy requires there should be stability in such sales and the same should not be set aside except for

reasons for which equity should set aside a sale between individuals. In re Burr Manufacturing & Supply Company (C.C.A.) 217 F. 16.

The final order of confirmation has the effect of a final, conclusive judgment. It cures all irregularities, misconduct, and unfairness in the making of the sale, and errors in the order itself and proceedings under it, if the court had jurisdiction to order the sale and the selling officer had authority to sell. Voorhees v. Jackson, 10 Pet. 449, 9 L.Ed. 490; Williamson v. Berry, 8 How. 495, 12 L.Ed. 1170.

[4] The petitioner has no right to complain of the sale because bidding was not confined exclusively to persons qualified by making a deposit as required under the order of sale. This order was not made for its benefit, but for that of the seller, and, of course, under well-recognized rules of procedure he could waive it. An order entered for the purpose of stifling bids would die of its own poison, and if an order requiring deposits from prospective bidders were construed to be for the benefit of the bidder, it would tend to stifle bidding, and such a principle should not be fostered by any court of equity.

The proof offered by the petitioner in the case at bar shows it made no complaint at the sale that bids were being received from unqualified bidders, and no inquiry was made by the petitioner's agent of the auctioneer or referee at the time of the sale as to whom the qualified bidders were, and no complaint was made as to the manner of receiving bids at the sale or at the time of confirmation.

The successful bidder is now estopped to complain of the form of the bids or the qualifications of the bidders. In re Jacobson (C.C.A.) 4 F.(2d) 211.

However, the form of the bid was not objectionable. A bid may be made by a wink or nod or in any mode by which the bidder signifies his willingness or intention to give a particular price for the property to be sold. Warehime v. Graf, 83 Md. 98, 34 A. 364; Millingar v. Daly, 56 Pa. 245; In re Ketterer Manufacturing Company (D.C.) 156 F. 719.

A bankruptcy sale should be conducted with the utmost fairness and good faith. Fraud, unfairness, and misrepresentation, or impositions practiced at the sale by either sellers or buyers, are sufficient grounds to set aside or refuse confirmation, and one seeking to set aside a sale on any of the above grounds is not chargeable with laches until he has acquired knowledge of the facts constituting fraud, or could have acquired them by the exercise of ordinary care, but prompt inquiry must be instituted by the aggrieved party to ascertain the facts and quick action taken after ascertainment to correct the wrong. Diligence is imperative because of the expense incident to the maintenance and care of property of the bankrupt, and also to make available the assets of the estate to the creditors at the earliest possible date. Proof of fraud must be clear and convincing, and the burden thereof rests on the complainant to establish the facts. Quigley v. Breckenridge, 180 Ill. 627, 54 N. E. 580; Crutchfield v. Thurman, 4 Bush (Ky.) 498; Wood v. Wood (Ky.) 38 S.W. 709; Lowenberg, Marks & Co. v. H. & C. Newman, Limited, 142 La. 959, 77 So. 891; Locke v. Keiler, 90 Miss. 3, 43 So. 673; Adderton v. Surratt, 58 N.C. 119.

Sham bids cannot be cried by an auctioneer for the purpose of enhancing good-faith bids, and by-bidding or puffing cannot be tolerated at a judicial sale, and the petitioner is entitled to have the sale complained of set aside if it has shown by a fair preponderance of the evidence that the auctioneer cried sham bids, or allowed by-bidding or puffing. Veazie v. Williams et al., 8 How. (49 U.S.) 134, 161, 12 L.Ed. 1018.

The petitioner has undertaken to prove the absence of other bidders from witnesses present at the sale who state they observed no one else bidding. However, the auctioneer testifies positively that he received bids from two persons other than the complainant here, and his testimony is not overthrown except by negative proof.

There is some evidence in this case that no other bids were received by the auctioneer except that of the agent of the complainant, from the testimony of persons present stating they did not see or hear other bidders, but when it is remembered that bidders at auction sales in most instances conceal their bids from every one except the auctioneer as much as possible, negative testimony of a lack of bidding is of slight value and is easily overcome by positive testimony of the fact. Killen v. Lide's Adm'x, 65 Ala. 505, 508; Trimble v. Tantlinger, 104 Iowa, 665, 74 N.W. 25, 69 N.W. 1045.

90

There is no positive evidence in this case contradicting or impeaching the testimony of the auctioneer that other bidders were present and bid on the property here in question, and that these bids were the basis of raising the bid of the complainant to $28,000. It therefore follows that the complainant has failed to carry the burden of proof in establishing fraud in the sale of the property to it, and its petition for review will therefore be denied.