**In re WELCH.**

No. 15344.

United States District Court
W. D. Kentucky, at Louisville.

Aug. 25, 1950.

W. H. Fulton and Woodward, Hobson & Fulton, Louisville, Ky., for the trustee.

Ernest Fulton, Bardstown, Ky., for Lee Stevens.

SHELBOURNE, District Judge.

This action is before the Court on the petition of the trustee for the bankrupt and Lee Stevens, purchaser of the real estate sold in this proceeding, to review an order of the referee entered on May 12, 1950, vacating and setting aside a sale of the real estate owned by the bankrupt and sold by the trustee pursuant to an order of the referee on the 29th day of March 1950.

November 16, 1949, John Welch was adjudicated a bankrupt on his voluntary petition and the case was referred to Honorable Hite H. Huffaker for proceedings under the bankruptcy laws.

At the first meeting of creditors, Henry J. Burt, Jr., was appointed trustee.

March 7, 1950, the trustee filed his petition for authority to sell 150 acres of land in Spencer County, Kentucky, subject to mortgage of the Mutual Benefit Life Insurance Company upon which it was alleged there was a balance due of $7,700 with interest at 4 percent from March 1, 1949.

It was further alleged by the trustee that the People's State Bank of Taylorsville claimed a mortgage lien on the 150 acres of land to secure an indebtedness of $18,153.31, which lien the trustee asserted was invalid because executed or recorded within four months prior to the filing of the bankrupt's petition in bankruptcy to secure pre-existing debts. The trustee alleged that the People's State Bank of Chaplin, Kentucky, is claiming a lien by authority of a mortgage recorded September 15, 1949, securing an indebtedness of $2,512.50, which lien the trustee claimed was invalid for the same reasons assigned in connection with the claim of the People's State Bank of Taylorsville.

It was further alleged that Wilson & Muir, Bardstown, Kentucky, had obtained a judgment in the Nelson Circuit Court in the sum of $7,000, and had levied an execution on the real estate within four months of the filing of the bankrupt's petition and held a lien obtained by judicial process when the bankrupt was insolvent.

He also alleged that the Lawrenceburg National Bank of Lawrenceburg, Kentucky, had secured a judgment against the bankrupt in the sum of $5,500, and had caused to be levied on the real estate on September 17, 1949, an attachment.

The sale was sought by the trustee subject to the mortgage of the Mutual Benefit Life Insurance Company, but free and clear from all other liens except ad valorem taxes for the year 1950 to be paid by the purchaser, and that the remaining liens as finally adjudicated attach to the proceeds of the sale.

The referee entered an order March 7, 1950, requiring the Peoples' State Bank of Taylorsville, the Peoples' State Bank of Chaplin, Wilson & Muir and the Lawrenceburg National Bank to set up their respective claims to liens on the real estate before the referee on or before the 20th day of March 1950 or to be barred from thereafter asserting any lien or claim.

512

March 18, 1950, the Mutual Benefit Life Insurance Company filed its claim and consented to the sale of said land of the bankrupt, subject to its mortgage lien, as prayed for in the trustee's petition.

March 20, 1950, the People's State Bank of Taylorsville filed a response to the trustee's petition and objected to any sale free and clear of its claimed mortgage lien until in a plenary action, the validity of its lien could be adjudicated.

The Lawrenceburg National Bank, Wilson & Muir, and the Peoples' State Bank of Chaplin filed their separate responses, each averring it had no objection to the immediate sale of the real estate free and clear of liens except that of the Mutual Benefit Life Insurance Company, the validity of all other liens to be determined at a subsequent date and the liens, if any adjudged, to attach to the proceeds of the sale.

On March 29, 1950, the referee entered an order, approved by the Peoples' State Bank of Taylorsville, who had previously objected to the sale, directing the trustee to sell the real estate, subject to the lien of the Mutual Benefit Insurance Company, free and clear of all other liens except liens for taxes for the year 1950, and to sell said property at public auction on the 17th day of April 1950, at the Court House door in Taylorsville, Spencer County, Kentucky, to the highest and best bidder for cash "subject to said mortgage of the said Mutual Benefit Life Insurance Company in the amount of approximately $7,700, the purchaser to pay, in cash, the balance over and above said mortgage and assume and agree to pay all taxes for the year 1950 * * *.

The referee placed an upset price of $18,000 on the real estate and directed that the trustee reject any and all bids under said upset price. The trustee was further directed, by this order, to advertise the sale by printed handbills posted, at least ten days before the sale, one at the door of the Court House of Spencer County, Kentucky, one at the door of the Court House of Jefferson County, Kentucky, one at the door of the United States Post Office Building in Louisville, Kentucky, one on the property to be sold and in the neighborhood where said property is located.

The trustee was further directed to advertise said sale once a week for at least three consecutive weeks prior to said sale in the "Spencer Magnet" a newspaper published in Taylorsville, Kentucky. It was provided that said handbills and advertisement "shall state the time and place and terms of sale and shall describe the property to be sold".

The order provided that an attested copy thereof shall be forwarded to all of the scheduled creditors and parties in interest and the meeting of March 29th was by the terms of the order adjourned to April 24, 1950, at 9:30 in the forenoon in the office of the referee "at which time the Trustee is directed to make his report of the sale of the real estate belonging to the bankrupt hereinabove provided for."

On the 24th day of April 1950, the trustee filed a paper styled "Trustee's Petition to Confirm Sale", which was verified by the trustee, the so-called petition reciting that the real estate was sold subject to confirmation of the Court, to Lee Stevens for $18,400 subject to the mortgage of the Mutual Benefit Life Insurance Company and in accordance with the provisions of the order of sale and at a price not less than 75 percentum of the appraised value of the real estate.

On the 24th day of April 1950, the referee entered an order reciting and filing by the trustee of his verified report of sale "for the sum of $18,400. subject to a credit of $7,700. with interest to November 16, 1949, the date of the filing of the petition herein, by reason of the assumption by the purchaser of a certain mortgage to the Mutual Benefit Life Insurance Company * * *". The order ordered the report filed and noted that the sale of the real estate was for a price fair and reasonable and in excess of 75 percentum of the appraised value and because ten days notice of said sale was given by order of March 29, 1950, to all creditors and parties in interest, it was ordered that the report and petition of the sale be approved and the trustee was thereupon directed to execute a deed to the purchaser upon the

payment of the balance of the purchase price.

The referee's certificate contains no reference to the execution of a deed by the trustee, but it is stated by counsel for the trustee in the brief that on April 27, 1950, Lee Stevens, the purchaser at the trustee's sale paid the amount of his bid—$18,400 less the amount of the mortgage of the Mutual Benefit Life Insurance Company—calculated with interest accrued to November 16, 1949,—the date the bankrupt's petition was filed—and that a deed was that day executed and delivered by the trustee, which deed the purchaser placed of record in the proper office in Spencer County, Kentucky; that three days later—April 27, 1950—Lee Stevens, the purchaser of the land, filed a petition for review of the referee's order of April 24, 1950, asking that a recomputation of the mortgage indebtedness of the Mutual Benefit Life Insurance Company be had and that the purchase price of $18,400 paid by Stevens at the sale be credited with the amount of the mortgage indebtedness with interest to April 24, 1950, rather than November 16, 1949, for the reason that the land having been sold subject to the mortgage indebtedness entitled the purchaser to a credit for the interest accruing between November 16, 1949 and April 24, 1950, which amounted to $134.49.

It is, of course, obvious that unless the purchaser be credited with this amount, his bid would amount to the accrued interest—$134.49—more than the $18,400 bid by him at the trustee's sale.

After the filing of this petition and on the 12th day of May 1950, the referee set aside the sale by the trustee and directed the trustee to readvertise and again sell the land in accordance with the order entered March 29, 1950. The reasons assigned in the order—

1. The newspaper notice in the Spencer Magnet did not contain a description of the property and was not a notice signed by the trustee, but by the auctioneer, authorized by the order of March 29, 1950, to make the sale—

2. That the sale was not made in accordance with the order directing same or in accordance with the provisions of Kentucky Revised Statutes *"covering and regulating such sales."* (Emphasis added.)

The newspaper advertisement, copy of which was filed by the trustee, advertises "Auction Sale, pursuant to order of Bankruptcy Court" and the land is there described as "Farm of John Welch located about 5 miles South of Taylorsville on State Highway No. 55, containing approximately 149 acres * * *" and advertises the auction sale to be held at the Spencer County Court House at Taylorsville, Kentucky, on Monday April 7, 1950. The last paragraph of the advertisement is as follows—"Said sale is made subject to the mortgage of the Mutual Benefit Life Insurance Company recorded in Mortgage Book 20 at page 231 in Spencer County Clerk's Office, being in the amount of approximately $7,700.00 with interest at 4 per cent. This sale will be for cash and the purchaser will be required to pay the balance above mortgage in cash; but will be required to pay only $1,000. on the day of the sale and will be given until May 2, 1950, to pay balance cash purchase price. No bid of less than $18,000. will be considered."

The referee's certificate of review was filed in this Court on July 7, 1950, and on August 2, 1950, all of the creditors, through counsel representing them in this proceeding, filed a petition stating as follows—"We, the undersigned creditors of John Welch, believing that the sale of the bankrupt's real estate, which consisted of a farm in Spencer County, Kentucky, to Lee Stevens, made at the Court House Door at Taylorsville, Kentucky, on or about April 17, 1950, was a fair sale and that the price of $18,400. at which the farm was sold to the purchaser, Lee Stevens, was a fair price and that if the sale was made again the farm would not sell for an amount substantially in excess of said sum, hereby petition and request this Honorable Court that the said sale be confirmed."

It will be noted that no exceptions were filed to the sale and no objections made to the confirmation—not only that, but that all of the creditors are requesting that the sale be confirmed, because they believe that there was realized at the sale substantially

the value of the property and that there was nothing before the referee at the time he undertook to vacate the sale to indicate that any increase over the amount paid by Stevens would be obtained at a second sale ordered by him.

The referee's order contained no provisions requiring the purchaser to reconvey to the trustee the title to the property conveyed to him pursuant to the referee's confirmation of the sale.

Section 110, Title 11 U.S.C.A. vests in the trustee upon his appointment, title of the bankrupt as of the date of the filing of the petition in bankruptcy.

Subsection f of Section 110 provides for the appraisement and sale and with respect to confirmation by the Court as follows—"Real and personal property shall, when practicable, be sold subject to the approval of the court. It shall not be sold otherwise than subject to the approval of the court for less than 75 percentum of its appraised value."

Subsection g of that section provides for conveyance to the purchaser by the trustee.

In Collier on Bankruptcy, 14th Edition, Volume 4, page 1581, it is said—"The setting aside of a sale is different from both the denial of confirmation and the reversal on review of or appeal from an order of confirmation. It presupposes an otherwise complete sale—that is, normally, a sale that requires confirmation and has been duly and definitely confirmed. Its function is one of strictly equitable jurisdiction, namely to avoid a sale, public or private, that is tinged with fraud, error, or similar defects which would in equity affect the validity of any private transaction."

And again on page 1586—"But when the Court is faced with a request to set aside a sale and to undo what has already been done with the Court's approval, the balance turns in favor of the policy of strengthening public confidence in judicial sales and executed contracts, and, as we have seen, the sale will be set aside only if the grounds alleged are sufficient to invalidate a similar private transaction on equitable grounds."

In Re Rapier Sugar Feed Company, D. C., 13 F.Supp. 85, 88, this Court, through the late Judge Elwood Hamilton said—"After a judicial sale has been confirmed by the court or the referee and the equitable title has thereby vested in the purchaser, public policy requires there should be stability in such sales and the same should not be set aside except for reasons for which equity should set aside a sale between individuals."

In that case as in the case at bar, no exceptions had been filed before the referee until after the sale was confirmed. Judge Hamilton further said—"The confirmation by the referee was sufficient to overcome all irregularities."

In the Kentucky case referred to by the referee in his certificate for review—Hurst v. White, 295 Ky. 123, 174 S.W.2d 3, 4—the judgment had directed the newspaper advertisement, unless that requirement should be waived by the parties, and no waiver had been executed. The Court said the fact that there was no newspaper advertisement of the sale as directed by the judgment did not render the sale void, but was a ground for exceptions for which the sale should be set aside.

The above case is quoted by the referee in his certificate as authority for vacation of the sale, but following the citation of cases, the Court of Appeals continued in the Hurst case—"But in the instant case defendants filed no exceptions to the master's report of sale, therefore it is too late on this appeal for them to complain on this score".

In Re Strunks Land & Jellico Mountain Coal & Coke Co., D.C.E.D.Ky., 64 F.Supp. 731, 733, Judge Ford said—

"A trustee's sale in bankruptcy is a judicial sale. Although prior to confirmation of the sale a bidder is not a purchaser and is not vested with any title or interest in the property offered for sale, upon acceptance of the bid and confirmation thereof by the Referee the sale is complete, the bidder becomes the purchaser of the property and the equitable title passes to him together with the right to have title conveyed as provided by Section 70, sub. g, Bankruptcy Act, upon his compliance with the terms of the sale. * * *

"Public policy requires that nothing be done to impair confidence in the stability of such judicial sales, and bona fide purchasers should not be deprived of their rights without just cause."

In Arthur v. Terry, 5 Cir., 131 F.2d 73, 74, the Court said—"While a defective advertisement may be a sufficient reason to deny confirmation and order a resale, still when the sale appears to be fair and for an adequate price confirmation may be ordered notwithstanding such irregularity."

In Re Wolke Lead Batteries Co., 6 Cir., 294 F. 509, 511, that Court said—"After a judicial sale has been confirmed by the court, and the equitable title has thereby vested in the purchaser, public policy requires that there should be stability in such sales, * * * except for reasons for which equity should set aside a sale between individuals."

In Robertson v. Howard, 229 U.S. 254, 264, 33 S.Ct. 854, 857, 57 L.Ed. 1174, the Supreme Court said—"As regards the alleged lack of an appraisement and error in the description of the property covered by the certificate contained in the published notice, we think they must in this collateral proceeding be deemed as mere irregularities, and that the order of confirmation, made by the referee was sufficient to validate the sale under the discretionary power given to the referee by § 70b of the bankruptcy act."

Section 110, Title 11, U.S.C.A. gives the District Court power to confirm or set aside, in its discretion, a sale of the bankrupt's property. Judicial sales are not complete until confirmed and until confirmation an accepted bid makes the bidder no more than one whose proposal has been recommended. In re Klein's Rapid Shoe Repair Co., 2 Cir., 54 F.2d 495. But by the act of confirmation, the sale becomes complete and the title passes. Coulter v. Blieden, 8 Cir., 104 F.2d 29, 33.

In Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 385, 81 L.Ed. 557, the Supreme Court said—"We think the court has the power, for good reason, to revise its judgment upon seasonable application and before rights have vested on the faith of its action."

See also Union Joint Stock Land Bank of Detroit v. Byerly, 310 U.S. 1, 60 S.Ct. 773, 84 L.Ed. 1041.

As was said in Proctor & Gamble Mfg. Co. v. Metcalf, 9 Cir., 173 F.2d 207, 209— "There is a general policy which emphasizes the stability of judicial sales as of great importance in smooth and correct judicial administration. Balancing that, it is of overwhelming importance that the rights of creditors in a concern in bankruptcy should be protected and that a disposal of property on terms which violate the rule should not be permitted to stand."

Both factors in the equation referred to in the above excerpt—that is protecting the stability of judicial sales and protecting rights of creditors—are in favor of the confirmation of the judicial sale. All of the creditors, who have filed claims in this estate, are here petitioning that the sale be permitted to stand because of their belief that the property has been fairly sold and that its marketable value has been realized.

■ With respect to the interest on the assumed indebtedness, which the purchaser Stevens requests to be credited, there can be little doubt. If he is denied this, he will be required to pay $134.49 more than he bid for the property. Coder v. Arts, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772, 16 Ann.Cas. 1008; Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162; Wilson v. Dewey, 8 Cir., 133 F.2d 962 and Oppenheimer v. Oldham, 5 Cir., 178 F.2d 386.

■ It is therefore concluded by the Court that the order of the referee entered May 12, 1950, vacating the sale and ordering a resale of the property be set aside and the sale is confirmed. The purchaser, Lee Stevens, is allowed the credit of $134.49 on the purchase price of $18,400 paid by him following the confirmation of the sale.

A judgment to that effect will be tendered by counsel for the trustee.